**FILED**

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

2020 JUN 17 PM 3: 08

NO. 2020 - 4908     SECTION

CIVIL DIVISION
DISTRICT COURT

**A**

ORA JEAN ADAMS

VERSUS

EAGLE, INC., ET AL

**SECTION 16**

JURY

FILED: _____

_____
DEPUTY CLERK

CHELSEY RICHARD NAPOLEON
CLERK, CIVIL DISTRICT COURT

**PETITION FOR DAMAGES**

TO THE HONORABLE CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA, AND THE JUDGES THEREOF:

1.    Made Petitioner herein is:

      **ORA JEAN ADAMS**, an adult resident of the State of Louisiana who resides at 1528

Delta Road, LaPlace, Louisiana, 70068.

2.    Made Defendants herein are:

    A.    **PREMISE/EMPLOYER/ /SHIPYARD DEFENDANTS**

        1.    **HUNTINGTON INGALLS, INCORPORATED**
        (f/k/a Northrup Grumman Shipbuilding, Inc., f/k/a Northrup
        Grumman Ship Systems, Inc., f/k/a Avondale Industries, Inc., f/k/a
        Avondale Shipyards, Inc., f/k/a Avondale Marine Ways, Inc.)
        This defendant is being sued for negligence.

        2.    **THE STATE OF LOUISIANA THROUGH THE BOARD OF
        SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND
        AGRICULTURAL AND MECHANICAL COLLEGE ON BEHALF
        OF MEDICAL CENTER OF LOUISIANA AT NEW ORLEANS**
        (A/K/A Charity Hospital)
        This defendant is being sued for negligence/premise/strict liability
        defendant.

    B.    **SUPPLIER/MANUFACTURER/SELLER/CONTRACTOR DEFENDANTS**

        3.    **EAGLE, INC.**
        (f/k/a Eagle Asbestos & Packing Co. Inc.)
        A Louisiana corporation with its principal place of business in New Orleans.
        This Defendant is being sued as a seller/supplier/product manufacturer
        defendant.

        4.    **UNION CARBIDE CORPORATION**
        A New York corporation with a principal business establishment in
        Louisiana. This defendant is being sued as a seller/supplier/contractor
        defendant.

        5.    **TAYLOR-SEIDENBACH, INC.**
        A corporation duly organized, created, and existing under and by virtue of
        the laws of the state of Louisiana, with its principal place of business in New
        Orleans, Louisiana.

Paige Jefferson
**VERIFIED**
6/19/2020

1

**EXHIBIT A**

This Defendant being sued as a seller/supplier/contractor defendant.

6.    **THE MCCARTY CORPORATION (f/k/a McCarty-Branton)**
A corporation duly organized, created and existing under and by virtue of
the laws of the State of Louisiana, with its principal place of business in
Baton Rouge, Louisiana.
This Defendant is being sued as seller/supplier/contractor defendant.

3.    Ora Jean Adams was diagnosed with asbestos-related lung cancer on or about May 19,
2019, which was caused by and a consequence of her exposure to asbestos as set forth herein. As
a direct and proximate result of the delictual conduct of the defendants, Plaintiff Ora Jean Adams
has recently contracted asbestos-related lung cancer and has suffered physically, financially,
mentally, and emotionally.

4.    The defendants, Eagle, Inc., and Taylor-Seidenbach, Inc., are domestic corporations with
their registered offices located in Orleans Parish.  Plaintiff was exposed to products, distributed
and installed by the above-referenced defendant at the work sites in paragraph two which her
husband, Lionel Adams, brought home on his work clothes from Avondale and Charity Hospital,
thus exposing Ora Jean Adams to asbestos. Plaintiff specifically alleges that these products, in
combination with other asbestos-containing products, caused her asbestos-related injuries.

5.    Plaintiff, Ora Jean Adams, was exposed to asbestos during her work at Charity Hospital in
New Orleans, LA from 1970-1972 as a laborer and janitor, so venue is proper in Orleans Parish
pursuant to La. Code of Civil Procedure article 74 as the parish where the wrongful conduct
occurred and where the damages were sustained.

6.    Orleans Parish is a proper venue for this matter pursuant to Louisiana Code of Civil
Procedure Article 42 and 74  because the Defendants Taylor-Seidenbach and Eagle are domestic
corporations licensed to do business in this State and have designated their primary business office
and/or primary place of business in Louisiana as Orleans Parish, and because the exposure of
Plaintiff originated in Orleans Parish.

7.    Each of the Defendants knew or should have known that its individual actions would
combine to cause the injuries to Plaintiff

8.    The actions of each of the Defendants are a proximate cause of Plaintiff's injuries. As a
result, all Defendants are jointly and solidarily liable for the damages caused by their combined
actions.

9.    Each of the Defendants contributed with Eagle, Inc., Taylor-Seidenbach, Inc., and The
State Of Louisiana Through The Board Of Supervisors Of Louisiana State University And

Agricultural And Mechanical College On Behalf Of Medical Center Of Louisiana At New Orleans (A/K/A Charity Hospital) to Plaintiff's exposures as stated herein. Each of the defendants is liable in solido to the Plaintiff. Thus, venue proper for these defendants is proper for all defendants pursuant to Louisiana Code of Civil Procedure articles 42 and 73.

10.     The damages sought by the Plaintiff, exclusive of interest and costs, exceed the minimum jurisdictional limits of the court.

11.     Plaintiff specifically disclaims any cause of action or recovery for any injuries caused by any exposure to asbestos dust that occurred in, or on the grounds of, a federal enclave.  Plaintiff also disclaims any cause of action or recovery for any injuries resulting from any exposure to asbestos dust caused by any conduct, action, acts or omissions of any and all federal officers, or committed at the direction of an officer of the United States Government.

12.     Plaintiff Ora Jean Adams was exposed to injurious levels of asbestos through her employment by Charity Hospital in New Orleans as a janitor in 1971-1972, and by her husband, Lionel Adams Sr.'s work at Huntington Ingalls/Avondale in and/or around their New Orleans area shipyards from approximately 1972-1979. While employed at the aforementioned locations, Lionel Adams used, handled, and/or was in the vicinity of others using and/or handling asbestos and/or asbestos-containing products at these facilities, dangerously high levels of asbestos fibers escaped into the ambient air of the work place, resulting in Mr. Adams being exposed to such asbestos and/or asbestos-containing products and subsequently exposing Petitioner to same.

13.     Petitioner Ora Jean Adams was exposed to the asbestos fibers through interaction with her husband and from her husband's vehicle and clothing, which he wore home from work and that she subsequently laundered.

14.     In connection with the Petitioner's exposure to asbestos from her work and her husband's work at the sites identified in Paragraph 12, from approximately 1970-1979, and through her work and her personal contact with her husband and from the dust she breathed while laundering her husband's clothes, the Petitioner suffered exposure to asbestos and asbestos-containing products designed, manufactured, sold, supplied, used and/or maintained at these sites by the Defendants.

15.     Before and during Ora Jean Adams' exposure periods, each of the defendants designed, tested, evaluated, manufactured, packaged, furnished, stored, handled, transported, installed, used, supplied and/or sold asbestos-containing products for use at, including but not limited to, each of the facilities listed in Paragraph 12 from which the Plaintiff was exposed to asbestos-containing

products, materials, insulation, and products that contained fibrous, incombustible, chemical-resistant mineral substances commonly called "asbestos".

16.     When inhaled or otherwise ingested, asbestos causes irreparable and progressive lung damage that can manifest itself as asbestos-related pleural disease, asbestosis, mesothelioma, pulmonary and bronchogenic carcinoma, gastrointestinal cancer, cardiac problems, other lung diseases, pneumoconiosis, and various other injuries.

17.     Each of the defendants knew or should have known through industry and medical studies, the existence of which was unknown to the Plaintiff of the health hazards inherent in the asbestos-containing products they were selling and/or using. Instead of warning the Plaintiff, and the general public about these dangers, the defendants ignored or concealed such information, or condoned such concealment, in order to sell or use asbestos or asbestos-containing products to avoid litigation by those who were injured from asbestos inhalation.

18.     As a direct and proximate result of having inhaled, ingested, or otherwise been exposed to asbestos as described above, Ora Jean Adams contracted asbestos-related lung cancer. Mrs. Adams was diagnosed with asbestos-related mesothelioma on or about May 19, 2019. A cause of Petitioner's contraction of asbestos-related lung cancer was her asbestos exposure.

19.     Because of the latency period between exposure to asbestos and the onset of cancer, and because of the concealment by some defendants of the causes and effects of exposure to asbestos, the Plaintiff did not know nor could he have reasonably known that Plaintiff's injuries were caused by his asbestos exposure until recently, which occurred less than one year prior to the filing of the instant Petition for Damages. Further, Plaintiff only recently discovered her injuries, not more than one year preceding the filing of this Original Petition for Damages.

20.     In connection with her husband's work at the aforementioned job sites, the Plaintiff was exposed to and inhaled or otherwise ingested significant quantities of asbestos, having neither knowledge or reason to believe that asbestos was dangerous.

## GENERAL NEGLIGENCE ALLEGATIONS- ALL DEFENDANTS

21.     On information and belief, all of the Defendants identified in paragraph 2 above were responsible to provide Plaintiff's husband with warnings concerning hazardous conditions at their sites and/or their use of hazardous materials, and generally to provide Plaintiff and her husband with safe premises in order to protect life health, safety, and welfare of Plaintiff, and had the following responsibilities:

4

A.    Inspection, approval, and supervision of these various premises for hazards and vices that may present a hazard to Plaintiff;

B.    To see that proper safety rules were adopted, promulgated, and enforced concerning the use and handling of hazardous materials that may present harm to people on the premises;

C.    To see that workers performed their duties pertaining to their work in a proper, safe and workmanlike manner so as not to present an unreasonable risk of harm to the workers, as well as Plaintiff;

D.    To see that the Defendants and their employees used safe and sound principles and practices in their work involving the use and storage of hazardous materials;

E.    To make health and hygiene decisions on any and all questions regarding the use of respiratory protection devices involving the use and storage of hazardous materials;

F.    To keep abreast of state-of-the-art-knowledge, as it pertains to the dangers of asbestos inhalation, involving the use and storage of hazardous materials;

G.    To provide adequate warnings, safety equipment, ventilation, and breathing apparatus, where such was unnecessary, in order to prevent Plaintiff from being harmed by exposure to asbestos in the environment in which her husband was required to be present;

H.    To make certain that Plaintiff and Plaintiff's husband, was provided a safe environment, free from excess asbestos dust inhalation and operations free from excess asbestos dust;

I.    To comply with applicable state and federal regulations regulating exposure to asbestos, including but not limited to, those regulations regulating exposure to asbestos, including but not limited to, those regulations promulgated by the U.S. Department of Labor pursuant to the Walsh/Healy Act and Occupational Safety and Health Act.

22.    Not only did defendants have the duties and responsibilities set forth in the foregoing paragraph, but they did actually undertake on an operational basis to perform said duties and fulfill said responsibilities, and they negligently failed to carry out those undertakings and assumed duties in the manner asserted in the paragraph below, and on information and belief, Defendants knew of the dust laden atmosphere in which Plaintiff and Plaintiff's husband was required to enter, and work, which was damaging and dangerous to Plaintiff and any other family member coming into contact with Lionel Adams' work clothing, and each knew or should have known of the dangers to Plaintiff's health posed by her husband's working in an atmosphere

polluted with asbestos dust without proper protection or warnings. Plaintiff alleges that these defendants knew or should have known that the lung cancer sustained by Plaintiff could have been avoided by the use of adequate ventilation, warnings, packaging and safety equipment.

23.     On information and belief, Defendants negligently failed in the performance of their responsibilities and/or actual undertakings to provide Plaintiff's and her husband, Lionel Adams, with safe premises and operations in the following particulars:

A.      Failing to properly ventilate the area in which Plaintiff and Plaintiff's husband, Lionel Adams, were required to enter in connection with his work;

B.      Failing to warn or provide proper safety appliances, including but not limited to respirators, air-fed hoods, etc. for Plaintiff and Plaintiff's husband, Lionel Adams' use;

C.      Failure to institute safety procedures and plans for the adequate protection of Plaintiff and Plaintiff and Plaintiff's husband, Lionel Adams;

D.      Failing to warn Plaintiff and Plaintiff's husband, Lionel Adams, of the dangers posed by the polluted atmosphere in which he was required to work including, but not limited to the risk of asbestosis, pleural disease, lung cancer, mesothelioma, other cancers, and the carcinogenic effect of the risk of mesothelioma caused by asbestos exposure to persons from the handling and use of asbestos;

E.      Failing to enforce applicable safety rules after such rules were actually adopted;

F.      Failing to keep abreast of the scientific and engineering knowledge regarding the dangers of, and protection against, the occupational exposure to asbestos;

G.      Failing to properly supervise operations;

H.      Failing to provide proper and safe laundry services to workers;

I.      Failure to prevent workers from taking asbestos dust home on their clothes;

J.      Commencing and continuation of operations which were under their control and supervision when they knew or should have known that such operations cause Plaintiff and her husband, Lionel Adams, to be exposed to asbestos dust, without protections;

K.      Failing to abide by applicable state and federal regulations regulating the premises' exposure to asbestos, including but not limited to, those regulations promulgated by the U. S. Department of Labor, pursuant to the Walsh/Healy Act and the Occupational Safety and Health Act;

L.      Failing to measure the levels of asbestos dust in the premises working environment.

6

24.     The negligence of these defendants was a substantial factor and contributed in causing damages to Plaintiff.

## NEGLIGENCE AND STRICT LIABILITY AGAINST MANUFACTURER/SELLER/SUPPLIER/CONTRACTOR DEFENDANTS

25.     The Defendants identified in Paragraph 2B above as manufacturers, sellers, contractors and/or suppliers of asbestos products were engaged in or materially participated in the business of manufacturing, or assisted in the manufacturing, or facilitating the manufacturing of asbestos products, or representing themselves as manufacturers of asbestos products, or are professional vendors of asbestos or asbestos-containing products, or as a contractor, which were expected to and did reach the Plaintiff's husband's job sites causing Plaintiff to be exposed to them.

26.     The products manufactured, distributed, supplied, sold and/or used by these defendants were defective, and unreasonably dangerous per se to Petitioner and husband, Lionel Adams, who was an intended and foreseeable user and bystander that was exposed to these products.  These defects include, without limitation, the following:

        A.     the manufacture, sale, supply and use of products that are unreasonably dangerous, or unreasonably dangerous per se;

        B.     manufacture, sale, supply and use of products that possess inherent and known properties that make them unreasonably dangerous by presenting high potential for causing serious injury, such as respiratory disease, cancer, and other health problems to those who would be foreseeably exposed to them doing the laundry and having contact with the clothing worn by Ora Adams' husband in the Petitioner's husband's trade;

        C.     lack of warning or of sufficient warning of the hazards these products would present in the course of their normal foreseeable use or intended use;

        D.     lack of safety instructions or of sufficient safety instructions for eliminating or reducing the health risks associated with the intended use of these products;

        E.     failure of defendants to inspect these products to assure sufficiency and adequacy of warnings and safety cautions;

        F.     failure to test or adequately test these products for defects or hazards that they could present to the intended or foreseeable users and bystanders;

        G.     failure to truthfully report or adequately report the results of product testing, and medical studies associated with foreseeable hazards of these products by intended or foreseeable users and bystanders;

7

H.     failure to prevent Petitioner's husband from taking dusty work clothes home;

I.     failure to properly design these products where the nature of the product did not require use of asbestos mineral or where alternate, equally suitable substances were readily available;

J.     defects in the composition and construction of these products;

K.     failure to recall these products manufactured, sold and supplied;

L.     failure to properly package these products so that they could be safely transported, handled, stored or disposed of;

M.     over-warranting the safety of these products;

N.     are liable to Plaintiff in strict liability for things in their guard, possession, custody or control, pursuant to article 2317 of the Louisiana Civil Code that have caused harm to Plaintiff.

27.     The defective conditions of defendants' products and fault, as noted above, are a cause of Plaintiff's injuries and damages complained of herein.

28.     Plaintiff also alleges that each and every one of the foregoing defendants were also negligent in engaging in the substandard conduct enumerated above and that this negligence was also a proximate cause of Plaintiff's injuries.

## NEGLIGENCE ACTION AGAINST SHIPYARD DEFENDANT, HUNTINGTON INGALLS INCORPORATED (f/k/a Northrup Grumman Shipbuilding, Inc., f/k/a Northrup Grumman Ship Systems, Inc., f/k/a Avondale Industries, Inc., f/k/a Avondale Shipyards, Inc., f/k/a Avondale Marine Ways, Inc.),

29.     Plaintiff makes no claim of strict liability against Avondale.. No allegation in this petition shall be interpreted as pleading a claim of strict liability concerning Avondale

30.     Plaintiff is in no way asserting strict liability or premise liability claims or causes of action against defendant Huntington Ingalls Incorporated. Plaintiff's causes of action are based upon the acts and omissions of defendant or those for whom the defendants are responsible, and are specifically not based upon any act committed at the direction of the United States Government or any of its officers or agents.

31.     Avondale is responsible for the conduct of those individuals and companies working on their premises with asbestos products, which created an unsafe work environment, which resulted in exposure to asbestos to Plaintiff and which resulted in the injury of Plaintiff for which defendants are liable under Louisiana law.

32.     Avondale failed to provide Plaintiff's husband a safe place in which to work free from the hazards of asbestos, which failure was a proximate cause of Plaintiff's injuries. Plaintiff's causes of action are based upon the acts and omissions of defendants or those for whom the defendants are responsible, and are specifically not based upon any act committed at the direction of the United States Government.

33.     Avondale negligently, recklessly, willfully and/or because of gross and wanton negligence, or fault, failed to properly discharge its duties to Plaintiff's husband and Plaintiff in the following particulars: (a) failure to provide Plaintiff's husband with a safe place to work; (b) failure to provide Plaintiff's husband with adequate engineering or industrial hygiene measures to control the level of exposure to asbestos, including but not limited to local exhaust, general ventilation, respiratory protection, segregation of work involving asbestos, use of wet methods to reduce the release of asbestos into the ambient air, medical monitoring, air monitoring, and procedures to prevent the transportation of asbestos fibers home on Plaintiff's husband's clothing; and (c) failure to inform or warn Plaintiff's husband of the hazards of asbestos exposure.

34.     These specific acts of fault were a substantial contributing factor of Plaintiff's injuries.

35.     Plaintiff's husband was exposed to asbestos-containing products while employed at and/or on the premises of Avondale at various times from 1973-1979. Plaintiff was exposed to fibers carried home on her husband's clothes and person from his work for Avondale. Plaintiff's exposure to asbestos products occurred without fault on her part. Plaintiff alleges that Avondale is liable for Plaintiff's injuries, as alleged, arising out of the negligent conduct of Avondale as detailed herein, and, in failing to provide plaintiff's husband a safe place in which to work free from the dangers of respirable asbestos-containing dust.

36.     As a direct and proximate contributing result of having inhaled, ingested or otherwise having been exposed to asbestos from Avondale, Plaintiff has received injuries, both physically and mentally, including, without limitation, all of the ramifications of lung cancer.

37.     Avondale negligently, recklessly, willfully and/or because of gross and wanton negligence or fault, failed to properly discharge their duties to the Plaintiff's husband and Plaintiff in the following: (a) failed to provide the Plaintiff's husband with a safe work environment; (b) failed to provide the Plaintiff's husband with safety equipment; (c) failed to provide the Plaintiff's husband with correct, adequate, or proper safety equipment; (d) recklessly and negligently failed to disclose, warn or reveal critical medical and safety information to Plaintiff's husband regarding

asbestos hazards in general and with regard to those specific hazards at the work site; (e) recklessly concealed and negligently omitted to reveal critical medical and safety information from Plaintiff's husband regarding the safety and health risks associated with the asbestos and asbestos-containing products at the worksites; (f) failed to timely remove asbestos hazards from the work place; (g) failed to properly supervise or monitor the work areas for compliance with safety regulations; (h) failed to provide a safe and suitable means of eliminating the amount of asbestos dust in the air; and (i) failed to provide the necessary facilities, practices and procedures that would lessen or eliminate the transfer of asbestos from the workplace to the home on the clothing and/or person of Plaintiff's husband which ultimately exposed Plaintiff.

38.    The above-described negligence, fault, and willful misconduct of Avondale was a proximate cause of Plaintiff's injuries.

39.    At all times throughout Plaintiff's husband's exposure to asbestos present and used within Avondale' facilities, and subsequent exposures to Plaintiff herself, Avondale knew that asbestos posed substantial health risks to those exposed to it, knew that there were specific engineering and industrial hygiene procedures which should have been employed to reduce exposures, knew that those exposed to asbestos on the job could bring home asbestos on their clothes and thereby injuriously expose those in the household, yet Avondale chose not to inform Plaintiff of this information or implement any meaningful safety precautions, all of which was a substantial contributing cause of Plaintiff's injuries.

40.    Avondale is liable to Plaintiff for their failure to exercise reasonable care to protect Plaintiff from the foreseeable dangers associated with exposure to asbestos.  Avondale, as the premises operator and/or manager and/or owner and occupier, and/or custodian, had a non-delegable duty to keep the premises safe for invitees. Avondale knew or should have known of the unreasonable risk of harm inherent in exposure to asbestos and asbestos-containing materials but failed to protect Plaintiff from said risk of harm.   Avondale failure to protect Plaintiff from known and/or foreseeable dangers constitutes negligence.  Said negligence was a proximate cause of Plaintiff's asbestos-related injuries and damages.

## STRICT LIABILITY AND NEGLIGENCE OF PREMISE OWNER

41.    The State Of Louisiana Through The Board Of Supervisors Of Louisiana State University And Agricultural And Mechanical College On Behalf Of Medical Center Of Louisiana At New Orleans A/K/A Charity Hospital, identified as a premise defendant above, (hereinafter "Premise

Defendant") is liable for Plaintiff's injuries caused by its fault, in the form of strict liability and/or negligence as detailed herein, and in failing to provide Plaintiff with a safe place to work free from the dangers of respirable asbestos-containing dust, which Plaintiff was subsequently exposed to.

42.     The Premise Defendant is liable to the Plaintiff for the damages described in this Petition for the following acts of negligence while Plaintiff was working within its work site:

      A.     Failing to provide respiratory protection to the Plaintiff;

      B.     Failing to provide safety equipment to Plaintiff;

      C.     Failure to provide general ventilation in Plaintiff's work areas;

      D.     Failing to provide local exhaust in Plaintiff's work areas;

      E.     Failing to provide air free from airborne asbestos fibers in Plaintiff's areas;

      F.     Failing to provide Plaintiff with proper medical monitoring;

      G.     Failing to educate Plaintiff of the hazards of asbestos;

      H.     Failing to post warning or caution signs regarding the hazards of asbestos;

      I.     Failing to implement wet methods to control the level of airborne asbestos fibers in Plaintiff's work areas;

      J.     Failing to implement the use of asbestos-free materials; and

      K.     Inducing Plaintiff to work in areas polluted with respirable asbestos fibers.

43.     As a direct result of the aforementioned acts, Plaintiff inhaled and otherwise ingested asbestos fibers from the asbestos and asbestos-containing products present within Charity Hospital during her work, and as a direct result, Plaintiff contracted the asbestos-related lung cancer complained of herein.

44.     During the course of the Plaintiff's work, Plaintiff was exposed to asbestos and/or asbestos containing products, which were in the care, control and custody of these defendants. Because of the extreme hazard it poses to humans, asbestos constitutes a defect or vice in the products to which Plaintiff was exposed, which defect or vice was a cause in fact of Plaintiff's injuries described herein. Accordingly, these defendants are strictly liable to Plaintiff in accordance with Louisiana Civil Code article 2315 and 2317.

45.     During the course of the Plaintiff's work, Plaintiff was exposed to asbestos released from these premises, which release was a cause in fact of Plaintiff's injuries described herein. Accordingly, The Premise Defendant is strictly liable to Plaintiff in accordance with, but not

limited to, Louisiana Civil Code article 2315, former Louisiana Civil Code articles 660 and 669, and *Langlois v. Allied Chemical Corp*, 249 So.2d 133 (La. 1971).

46.     The Premise Defendant knew or should have known that asbestos posed a hazard to humans and that there were specific engineering and industrial hygiene controls that could help reduce the levels of airborne asbestos fibers, nonetheless failed or suppressed, through silence, neglect or inaction, the truth regarding asbestos to Plaintiff so as to obtain an unjust advantage for themselves over and at expense of Plaintiff or to cause loss or inconvenience to Plaintiff. This action or inaction by the defendants was a direct and proximate cause of the damages described herein.

## DAMAGES

47.     The conduct of Defendants, as alleged hereinabove, was a direct, proximate and producing cause of the damages resulting from asbestos-related lung cancer of the Petitioner, and of the following general and special damages including:

      A.     The conscious physical pain and suffering and mental anguish sustained by Petitioner (past, present and future);

      B.     The disfigurement suffered by Petitioner;

      C.     The physical impairment suffered by Petitioner (past, present and future);

      D.     Reasonable and necessary medical expenses incurred by Petitioner;

      E.     All past, present and future lost earnings and loss of earning capacity;

      F.     Loss of quality of life;

      G.     All forms of relief or categories of damages allowed by Louisiana law for survival claims, against parties the law allows such claims to be alleged against, with interest from the date of injury until paid, plus costs of these proceedings.

48.     Plaintiff demands a trial by jury on all issues.

WHEREFORE, Petitioner demands judgment against the Defendants, and each of them, jointly, severally and/or in solido for all damages, for their costs expended herein, for judicial interest from the date of judicial demand, and for such other and further relief, both at law and in equity, to which Petitioner may show herself justly entitled.

Respectfully submitted,

**BARON & BUDD, P.C.**
2600 CitiPlace Drive
Suite 400
Baton Rouge, LA  70808
Tel:  (225) 927-5441
Fax:  (225) 927-5449

By: _____
David R. Cannella (Bar Roll No. 26231)
Christopher C. Colley (Bar Roll No. 30322)
Jeremiah S. Boling (Bar Roll No. 34249)
Kristopher L. Thompson (Bar Roll No. 37898)
Benjamin D. Rumph (Bar Roll No. 37851)
**ATTORNEYS FOR PLAINTIFFS**

**PLEASE SERVE THE FOLLOWING DEFENDANTS WITH A COPY OF PLAINTIFF'S
PETITION FOR DAMAGES:**

1. EAGLE, INC. f/k/a EAGLE ASBESTOS & PACKING CO. INC.
   Registered Agent:
   Susan B. Kohn
   Simon, Peragine, Smith & Redfearn
   1100 Poydras St., 30th Floor
   New Orleans, La 70163

2. HUNTINGTON INGALLS INCORPORATED
   (f/k/a Northrup Grumman Shipbuilding, Inc., f/k/a Northrup Grumman Ship Systems,
   Inc., f/k/a Avondale Industries, Inc., f/k/a Avondale Shipyards, Inc., f/k/a Avondale
   Marine Ways, Inc.)
   Through its agent for service:
   CT Corporation System
   3867 Plaza Tower Drive
   Baton Rouge, LA 70816

3. TAYLOR-SEIDENBACH, INC.
   Through its agent for service:
   Robert I. Shepard or Hal Shepard
   731 S. Scott Street
   New Orleans, LA 70119

4. THE MCCARTY CORPORATION
   (f/k/a McCarty-Branton)
   Through its agent for service:
   Paul Spaht
   4232 Bluebonnet Blvd.
   Baton Rouge, LA 70809

5. UNION CARBIDE CORPORATION
   Through its agent for service:
   CT Corporation System
   3867 Plaza Tower Drive
   Baton Rouge, LA  70816

6. THE STATE OF LOUISIANA THROUGH THE BOARD OF SUPERVISORS OF
   LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL
   COLLEGE ON BEHALF OF MEDICAL CENTER OF LOUISIANA AT NEW
   ORLEANS A/K/A CHARITY HOSPITAL
   Through its Chair:
   Ms. Mary L. Werner
   104B University Administration Building
   3810 W. Lakeshore Drive
   Baton Rouge, LA 70808

7. THE STATE OF LOUISIANA THROUGH THE BOARD OF SUPERVISORS OF
   LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL
   COLLEGE ON BEHALF OF MEDICAL CENTER OF LOUISIANA AT NEW
   ORLEANS A/K/A CHARITY HOSPITAL
   Through its Chair:
   Ms. Mary L. Werner
   7777 Nelson Road
   Lake Charles, LA 70605

8. THE STATE OF LOUISIANA THROUGH THE BOARD OF SUPERVISORS OF
   LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL
   COLLEGE ON BEHALF OF MEDICAL CENTER OF LOUISIANA AT NEW
   ORLEANS A/K/A CHARITY HOSPITAL
   Through the Attorney General for the State of Louisiana:
   Jeff Landry
   1885 North 3rd Street
   Baton Rouge, LA  70802

9. THE STATE OF LOUISIANA THROUGH THE BOARD OF SUPERVISORS OF
   LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL
   COLLEGE ON BEHALF OF MEDICAL CENTER OF LOUISIANA AT NEW
   ORLEANS A/K/A CHARITY HOSPITAL
   Through The Division of Administration - The Office of Risk Management
   1201 N. 3rd St.
   Baton Rouge, LA 70802

10. THE STATE OF LOUISIANA THROUGH THE BOARD OF SUPERVISORS OF
    LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL
    COLLEGE ON BEHALF OF MEDICAL CENTER OF LOUISIANA AT NEW
    ORLEANS A/K/A CHARITY HOSPITAL
    Through the LSU Interim President:
    Thomas C. Galligan, Jr.
    3810 W. Lakeshore Drive
    Baton Rouge, LA 70808