### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ORA JEAN ADAMS,** **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-694** |
| **EAGLE, INC. ET AL.** **Defendants** | **SECTION "E" (4)** |

### ORDER AND REASONS

Before the Court is a motion for summary judgment filed by Ora Jean Adams ("Plaintiff") against Huntington Ingalls, Inc. ("Avondale" or "Defendant").[1] Avondale opposes the motion.[2] The Court held oral argument on the motion on August 18, 2022.[3]

### BACKGROUND

This personal injury action is based on Plaintiff's alleged exposure to asbestos.[4] Plaintiff's state court petition alleges two sources of exposure to asbestos. First, Plaintiff contends her husband, Lionel Adams ("Mr. Adams"), was exposed to "dangerously high levels of asbestos fibers" at Avondale's New Orleans area shipyards from approximately 1972 to 1979.[5] Mr. Adams worked at Avondale as a pipefitter and welder on various vessels.[6] In his work, Mr. Adams used asbestos-containing fire blankets and worked around insulators cutting asbestos-containing insulation to fit around pipes.[7] This work created dust that got on his clothes, which Mr. Adams wore from work to his home, where Plaintiff would shake out his clothes before laundering them.[8] Second, from 1970 to 1972,

---

[1] R. Doc. 105.
[2] R. Doc. 140; *see also* R. Doc. 202.
[3] R. Doc. 185.
[4] R. Doc. 1-2 at p. 2, ¶ 3.
[5] *Id.* at ¶¶ 4, 12.
[6] R. Doc. 1 at p. 3.
[7] *Id.*
[8] *Id.*

Plaintiff worked as a laborer and janitor at Charity Hospital in New Orleans where she was exposed to asbestos.[9] According to Plaintiff, these two sources of exposure—Avondale and Charity Hospital—caused her ultimate diagnosis of asbestos-related lung cancer on May 19, 2019.[10]

On June 17, 2020, Plaintiff filed a petition for damages in the Civil District Court for the Parish of Orleans, State of Louisiana, against several Defendants, including Avondale.[11] Plaintiff brings state law negligence claims against Avondale for failing to provide Plaintiff's husband "a safe place to work free from the dangers of respirable asbestos-containing dust" and for failure to warn of the dangers of asbestos.[12]

Avondale removed Plaintiff's suit to federal court on April 5, 2021.[13] In its Notice of Removal, Avondale asserts this Court has subject matter jurisdiction because Avondale was, at all material times, acting under an officer of the United States as set forth in 28 U.S.C. § 1442(a)(1).[14] Removal under 28 U.S.C. § 1442 does not require the consent of any other defendant.[15]

Before removing, on August 11, 2020, Avondale filed its answer with incorporated affirmative defenses, third-party claims, and crossclaims.[16] Relevant to the instant motion,[17] Avondale asserted as affirmative defenses the *Boyle* government contractor defense and *Yearsley* derivative sovereign immunity.[18]

On July 18, 2022, Plaintiff Ora Jean Adams filed a motion for summary

---

[9] R. Doc. 1-1 at p. 3, ¶ 12.
[10] *Id.* at p. 2, ¶ 3.
[11] *See id.* at pp. 1-2.
[12] R. Doc. 1-1 at p. 9, ¶ 35.
[13] R. Doc. 1.
[14] *Id.* at p. 1.
[15] *See Humphries v. Elliott Co.*, 760 F.3d 414, 417 (5th Cir. 2014).
[16] R. Doc. 4-1 (beginning on p. 33).
[17] R. Doc. 105.
[18] R. Doc. 4-1 at p. 40 (the sixteenth and seventeenth defense, respectively).

2

judgment.[19] Plaintiff seeks a ruling from this Court that "Avondale is not immune from Plaintiff's state law claims for failing to warn its employees of the dangers of asbestos, or from taking precautions to prevent the spread of asbestos dust from the shipyard" under either *Boyle* or *Yearsley*.[20] The motion is opposed.[21]

## **MOTION FOR SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[22] "An issue is material if its resolution could affect the outcome of the action."[23] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[24] All reasonable inferences are drawn in favor of the non-moving party.[25] While all reasonable inferences must be drawn in favor of the non-moving party, the non-moving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions or "only a scintilla of evidence."[26] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law.[27]

---

[19] R. Doc. 105.
[20] *Id.* at p. 1.
[21] R. Doc. 140; *see also* R. Doc. 202.
[22] Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[23] *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[24] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[25] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[26] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).
[27] *Hibernia Nat. Bank v. Carner*, 997 F.2d 94, 98 (5th Cir. 1993) (citing *Amoco Prod. Co. v. Horwell Energy, Inc.*, 969 F.2d 146, 147–48 (5th Cir. 1992)).

"Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . the material fact may be presented in a form that would not, in itself, be admissible at trial."[28]

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."[29]  To satisfy Rule 56's burden of production, the moving party must do one of two things: "the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim" or "the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim."[30] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the non-moving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[31]

If the dispositive issue is one on which the non-moving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the non-movant's claim, or (2) affirmatively demonstrating that there is no evidence in the record to establish an essential element of the non-movant's claim.[32] If the movant fails to affirmatively show the absence of evidence in the record, its motion for summary

---

[28] *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017) (citations omitted).
[29] *Celotex*, 477 U.S. at 323.
[30] *Id.* at 331.
[31] *Id.* at 322–24.
[32] *Id.* at 331–32 (Brennan, J., dissenting).

judgment must be denied.[33] Thus, the non-moving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[34] "[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[35]

## **FACTS**

### I.    **Undisputed Facts**

The following facts are undisputed. Plaintiff Ora Jean Adams was diagnosed with lung cancer on April 10, 2019.[36] Plaintiff's husband, Lionel Adams, during his deposition, testified that he was a pipefitter/welder at Avondale between 1970 and 1978 where he believes he was exposed to asbestos and asbestos-containing products.[37] The relevant Avondale government contracts required Avondale to use asbestos to manufacture the vessels Plaintiff's husband worked on.[38] Plaintiff's husband further testified during his

---

[33] *See id.* at 332.

[34] *Id.* at 332–33. The burden would then shift back to the movant to demonstrate the inadequacy of the evidence relied upon by the non-movant. Once attacked, "the burden of production shifts to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)." *Id.* at 332–33, 333 n.3.

[35] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

[36] R. Doc. 105-2 at ¶ 1; *see also* R. Doc. 140-2 at ¶ 1.

[37] R. Doc. 105-2 at ¶ 2; *see also* R. Doc. 140-2 at ¶ 2. Whether Plaintiff can meet the *Rando* standard announced by the Louisiana Supreme Court for asbestos-related negligence claims is not the subject of the instant motion. *Rando v. Anco Insulations, Inc.,* 16 So.3d 1065 (La. 2009).

[38] During the August 18, 2022 oral argument before the Court, the parties agreed the relevant contracts required Avondale to use asbestos-containing products to manufacture certain vessels. These vessels include Destroyer Escorts ("DEs"), Coast Guard Cutters ("CGCs"), and LASH vessels (collectively referred to as "federal vessels") pursuant to government contracts between Avondale and the U.S. Navy, U.S. Coast Guard, and U.S. Maritime Administration. *See* sealed exhibits available at R. Doc. 140-26, R. Doc. 140-27,

deposition that his exposure to asbestos at Avondale contaminated his working clothes with asbestos fibers and dust.[39] Plaintiff and her husband testified that Plaintiff herself was exposed to asbestos fibers and dust through Plaintiff's close contact with her husband's asbestos-contaminated clothes because Mr. Adams wore his work clothes to and from work, and Plaintiff laundered them in their home.[40] Plaintiff's husband testified that he was never warned by Avondale of the dangers of asbestos, was never warned that exposure to asbestos could cause harm to others if brought home to his family, was not provided adequate respiratory protection, was not provided any work clothing or laundering services or facility to minimize take-home asbestos exposures, and there were no safety protocols in place to reduce asbestos exposures at Avondale.[41]

The parties clarified at oral argument that it is undisputed the relevant government contracts did not contain any instructions about asbestos warnings to be given to Avondale employees.[42] The parties further clarified it is undisputed that the Walsh-Healey Act, which deals generally with, *inter alia*, use and storage of asbestos, was incorporated by reference into the relevant government contracts, and Avondale was required to "perform[] subject to the provisions of the Act."[43]

## II.   Disputed Facts

Avondale argues Plaintiff's motion for summary judgment should be denied because there are disputed issues of material fact. First, Plaintiff argues it is an undisputed

---

and R. Doc. 140-28. Moreover, for example, R. Doc. 140-26 at p. 14, confirms the use of asbestos was required by the government.

[39] R. Doc. 105-2 at ¶ 3; *see also* R. Doc. 140-2 at ¶ 3.

[40] R. Doc. 105-2 at ¶ 4; *see also* R. Doc. 140-2 at ¶ 4. Avondale further admits that Mr. Lionel Adams wore his work clothes to and from work and that Plaintiff laundered his work clothes.

[41] R. Doc. 105-2 at ¶ 8; *see also* R. Doc. 140-2 at ¶ 8.

[42] R. Doc. 105-2 at ¶ 6; *see also* R. Doc. 140-2 at ¶ 6. During oral argument on the motion, counsel for the Defendant conceded the government provided no explicit instruction about employee warnings.

[43] R. Doc. 140-28 at p. 11; *see also* R. Doc. 105-2 at ¶ 7; *see also* R. Doc. 140-2 at ¶ 7.

fact that her husband was exposed to asbestos as a result of his work at Avondale.[44] Defendant denies this assertion in part.[45] Specifically, Avondale admits Plaintiff's husband testified at his deposition he was exposed to asbestos while employed by Avondale, but Avondale denies Plaintiff's husband was exposed to significant amounts of asbestos during the relevant period of employment.[46] This disputed issue of fact is not material to the instant motion, which does not hinge on whether Mr. Adam's was exposed to significant amounts of asbestos.

Second, Plaintiff states it is an undisputed fact that she was exposed to asbestos when she laundered her husband's work clothes.[47] Defendant denies this assertion in part. Specifically, Avondale admits that Plaintiff and Plaintiff's husband testified in their depositions that Plaintiff was exposed, but Avondale denies Plaintiff was exposed to significant amounts of asbestos as a result of her husband's work at Avondale.[48] This disputed issue of fact is not material to the instant motion, which, as with Mr. Adams, does not hinge on whether Plaintiff was exposed to significant amounts of asbestos.

Third, Plaintiff included in her statement of undisputed material facts a statement that Avondale was not constrained by its government contracts from warning its employees or implementing its own protocols to prevent asbestos contamination.[49] Defendant denies this statement, instead contending it was required to comply with then-prevailing government safety regulations on the use and storage of asbestos containing products and arguing the government immunity defenses do not require it to have taken

---

[44] R. Doc. 105-2 at ¶ 2; *see also* R. Doc. 105-2 at ¶ 4.
[45] R. Doc. 140-2 at ¶ 2; *see also* R. Doc. 140-2 at ¶ 4.
[46] R. Doc. 140-2 at ¶ 3.
[47] R. Doc. 105-2 at ¶ 4.
[48] R. Doc. 140-2 at ¶ 4.
[49] R. Doc. 105-2 at ¶¶ 6-7.

some action beyond complying with the contract and incorporated safety regulations.[50]
Avondale further argues it did not owe a duty to warn its employees about the dangers of
asbestos.[51] Nevertheless, during oral argument, the parties agreed there is no government
instruction on asbestos warnings in their contracts and the relevant government contracts
incorporated the Walsh-Healey Act by reference. Thus, to the extent there are any
"factual" disputes remaining, they are immaterial to the resolution of the instant motion.
The parties remaining arguments on these issues are legal in nature.

In sum, no dispute of fact prevents the Court from resolving Plaintiff's motion for
summary judgment.[52]

## LAW AND ANALYSIS

### I. *Boyle* does not provide a defense to Plaintiff's claims for failure to warn and failure to prevent the spread of asbestos.

#### A. Plaintiff is entitled to summary judgment that *Boyle* does not provide a defense to her failure to warn claim.

Plaintiff's motion seeks summary judgment that Avondale is not entitled to the
*Boyle* affirmative defense to liability for its failure to warn Plaintiff or her husband of the
hazards of asbestos exposure.[53]

In 1988, the United States Supreme Court announced what is now known as the
*Boyle* standard for a government contractor defense in the case of *Boyle v. United
Technologies Corp*.[54] That case involved a contract between the federal government and
a manufacturer for the construction of military helicopters.[55] The plaintiff's son, a U.S.
Marine helicopter copilot, drowned in one of the helicopters after it crashed into the ocean

---

[50] R. Doc. 140-2 at ¶ 7.
[51] *Id.*
[52] R. Doc. 105
[53] *Id.* at p. 16.
[54] 487 U.S. 500 (1988).
[55] *Id.* at 503.

off the coast of Virginia.[56] Although the plaintiff's son survived the immediate crash, he drowned when he could not escape through the emergency door.[57] The plaintiff sued the government contractor, alleging the existence of a product design defect in the helicopter's emergency door.[58] The government contractor argued it was entitled to a government contractor defense from state law claims predicated on a design defect because it followed the government's design specifications.[59]

In *Boyle*, the Supreme Court determined that, under certain circumstances, a contractor is entitled to the government contractor defense to state law tort claims for product design defects because, without the defense, the financial burden of liability judgments against government contractors ultimately would be passed through to the United States and impermissible judicial second-guessing of the government's social, economic, and political decisions would occur.[60] In crafting a test to determine the circumstances under which the government contractor defense may be used, the Supreme Court drew from the doctrine of preemption.[61] Specifically, the Supreme Court explored whether "uniquely federal interests" are implicated by the relevant government contracts, and whether a "significant conflict" exists between the identified federal interests and "the operation of state law."[62] When a significant conflict exists between federal interests and state law, federal interests preempt state interests and take superiority, consistent with the U.S. Constitution's Supremacy Clause.

In its search for a limiting principle to identify the situations in which a "significant

---

[56] *Id.*
[57] *Id.*
[58] As a result of the government's design spec, the emergency door opened outward, rather than inward. Due to water pressure build up as the helicopter sank, the emergency door did not open. *Id.*
[59] *Id.* at 503-04.
[60] *Id.* at 512.
[61] *Id.* at 504.
[62] *Id.* at 507 (internal citations omitted).

conflict" with federal policy or interest and the operation of state law exists, the Supreme Court relied on the discretionary function exception to the Federal Tort Claims Act ("FTCA").[63] The FTCA outlines certain areas in which the federal government has waived its sovereign immunity and may be subject to tort liability.[64] The FTCA waiver is, however, subject to exception.[65] The "discretionary function exception" to the FTCA provides that the federal government cannot be liable—even in areas in which it has otherwise consented to tort liability—when the liability stems from the exercise of its discretion.[66] This exception is designed to avoid placing courts in the position of second-guessing the government's social, economic, and political decisions.[67]

In *Boyle*, the Supreme Court reasoned the discretionary function exception "demonstrates the potential for, and suggests the outlines of," a preemption analysis to determine a contractor's entitlement to the government contractor defense[68] because it makes little sense to shield the federal government from liability under the FTCA's discretionary function exception, but allow liability to be imposed on government contractors who are merely executing the government's orders.[69] If the attempted imposition of liability is allowed to occur under those circumstances, the financial burden of judgments ultimately will flow through the contractors to the government and result in higher contract prices. In addition, judicial second-guessing of government policy decisions will, in effect, occur.[70] Such an outcome, the Supreme Court reasoned, would

---

[63] *Id.* at 509-11 (citing 28 U.S.C. § 2680(a)).
[64] *Id.* at 511.
[65] *Id.*
[66] *Id.*
[67] *Id.*
[68] *Id.*
[69] *Id.* at 511-12.
[70] *Id.*

frustrate the very purpose underlying the discretionary function exception.[71] Thus, the existence of the government's exercise of discretion is critical to a government contractor being able to successfully employ the *Boyle* defense. Without that discretion, no significant conflict exists between federal interests implicated by the government's contract and the operation of state law.[72] Ultimately, *Boyle* was remanded so the facts could be developed to determine whether the government, in contracting for the manufacturer of military helicopters, had exercised its discretion.[73]

As set forth in *Boyle*, a government contractor may avoid state law liability under *Boyle* when: (1) the federal government has approved reasonably precise specifications (i.e., the government has exercised its discretion), (2) the contractor has complied with the specifications, and (3) the contractor warned the United States about dangers resulting from the specifications known to the contractor but not to the United States.[74] "Stripped to its essentials," *Boyle* is a defense that "[t]he Government made me do it."[75]

Approximately a year after *Boyle*, the United States Court of Appeals for the Fifth Circuit applied the *Boyle* standard in *Garner v. Santoro*.[76] In that case, a spray painter sued the manufacturer of epoxy paint for injuries he sustained as a result of exposure to paint while working on vessels under construction for the U.S. Navy.[77] The plaintiff brought two claims against the manufacturer: an unreasonably dangerous product claim and a claim for failure to warn about the dangers of exposure to epoxy.[78] At trial, the defendant was precluded from employing a government contractor defense because

---

[71] *Id.*
[72] *Id.* at 512.
[73] *Id.* at 512-13.
[74] *Id.*
[75] *In re Katrina Canal Breaches Litig.*, 620 F.3d 455, 465 (5th Cir. 2010).
[76] 865 F.2d 629 (1989).
[77] *Id.* at 631-32.
[78] *Id.* at 632 n.8.

"[t]he district court and the magistrate decided that the government contractor defense was inapplicable as a matter of law."[79] On appeal, the Fifth Circuit determined it was legal error for the district court to cast aside the *Boyle* defense from the outset, and remanded the case for additional discovery because the evidence required to make a determination as to the applicability of the defense needed to be developed.[80] Said differently, "[b]ecause [the defendant] was precluded from virtually any development of its defense," the Fifth Circuit was "unable to say whether the conditions outlined in *Boyle* as the applicability of the government contractor defense" were satisfied.[81]

Nevertheless, the Fifth Circuit "address[ed] briefly the applicability of *Boyle*" in *Garner*.[82] First, the Fifth Circuit acknowledged the application of *Boyle* was "complicated by the fact that [the plaintiff in *Garner*] asserted two theories . . . at trial—the existence of an unreasonably dangerous product and the failure to warn."[83] That complication stemmed from the narrow context in which *Boyle* was decided, a case alleging only an unreasonably dangerous design. "*Boyle* holds that the government contractor defense can apply to design defects in military equipment, e.g., [the plaintiff's] unreasonably dangerous product claim. *Boyle*, however, does not address whether a failure to warn claim may be defeated by the government contractor defense."[84] Still, the Fifth Circuit, relying on its previous holding when it reasoned "the policies underlying the government contractor defense apply equally well regardless of whether the action is predicated on an allegedly dangerous defect in the design of the product or a failure to warn,"[85] again

---

[79] *Id.* at 633.
[80] *Id.* at 635.
[81] *Id.*
[82] *Id.*
[83] *Id.*
[84] *Id.*
[85] *Bynum v. FMC Corp.*, 770 F.2d 556, 574 n.24; *see also McGonigal v. Gearhart Industries, Inc.*, 851 F.2d 774, 777 (5th Cir. 1988) (holding that *Bynum* is still the law of the Fifth Circuit with the exception of the

recognized that "the government contractor defense could be asserted in failure to warn cases."[86]

In more recent years, the Fifth Circuit clearly has applied the *Boyle* government contractor defense in failure to warn cases, as seen in *Jowers v. Lincoln Electric Company*.[87] In this case, the plaintiff was a welder for Ingalls, a U.S. Navy shipbuilding contractor.[88] While welding, fumes containing manganese were emitted from "stick" and "wire" welding consumables; the plaintiff testified he inhaled the fumes for six to seven hours a day in the course of his work.[89] Manganese is a known neurotoxin and inhalation of its fumes can result in serious neurological disease.[90] The plaintiff brought suit against the manufacturer of the "stick" and "wire" welding consumables for failure to warn.[91] The Fifth Circuit, citing *Boyle*, explained the defendant would be entitled to the government contractor defense only if it established: (1) the federal government exercised discretion and approved warnings for the product; (2) the warnings the defendant provided about the product conformed to the federal government specification; and (3) the defendant warned the federal government about dangers known to the defendant but not the government.[92] This statement of the elements of *Boyle* in the context of a failure to warn claim is consistent with other circuits' application of the defense.[93]

Most recently, a different section of the Eastern District of Louisiana applied

---

portion in *Bynum* that relies upon the *Feres-Stencel* doctrine as a basis for the government contractor defense, which the U.S. Supreme Court rejected in *Boyle*).

[86] *Garner*, 865 F.2d at 635 (citing *Bynum v. FMC Corp.*, 770 F.2d 556, 574 n.24).

[87] 617 F.3d 346.

[88] *Id.* at 350-51.

[89] *Id.* at 351.

[90] *Id.*

[91] *Id.*

[92] *Id.* at 352.

[93] *See, e.g., Tate v. Boeing Helicopters*, 55 F.3d 1150, 1157 (6th Cir. 1995); *Sawyer v. Foster Wheeler, LLC*, 860 F.3d 249 (4th Cir. 2017); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992 (7th Cir. 1996).

*Jowers* in the context of a failure to warn claim "sounding in employer negligence."[94] In fact, the claims stemmed from asbestos exposure in a case in which Avondale is a defendant.[95] In *Broussard v. Huntington Ingalls, Inc., et al.*, a plaintiff diagnosed with mesothelioma brought a suit against, *inter alia*, Avondale.[96] The plaintiff alleged exposure to asbestos through laundering the clothes of her ex-husband, who worked around asbestos dust while employed by Avondale.[97] The plaintiff brought claims for failure to warn and failure to prevent the spread of asbestos by taking certain precautions.[98] On the failure to warn claim, the court adopted *Jowers*' statement of the elements for the *Boyle* defense.[99] There was no evidence the Navy or Coast Guard weighed in in any way on the question of warnings by Avondale to its employees. As a result, the first and second elements under *Jowers* application of *Boyle*—(1) the federal government's exercise of its discretion by approving warnings for the product; (2) the warnings the defendant provided about the product conforming to the federal government specification—were not met.[100] Said differently, "[t]here [was] no evidence that the contracts constrained Avondale in any way from issuing warnings to its employees, or implementing its own protocols to prevent contamination by asbestos. Simply put, issuing a warning would not have required a departure from the government's specifications."[101]

---

[94] *Broussard v. Huntington Ingalls, Inc.*, 2021 WL 5448795 (E.D. La. 11/22/2021). Defendant argues here that Judge Lemmon should not have applied *Jowers* to a claim "sound[ing] in employer negligence." R. Doc. 150 at p. 20. Avondale cites nothing for the proposition that *Boyle*'s elements in the context of a failure to warn claim would somehow change for a failure to warn claim "sound[ing] in employer negligence." Thus, the Court finds the argument meritless.
[95] *Broussard*, 2021 WL 5448795 at *1.
[96] *Id.*
[97] *Id.*
[98] *Id.*
[99] *Id.* at *2.
[100] *Id.* at *3.
[101] *Id.*

Applying *Jowers* and *Broussard* to the case at bar, it is clear Avondale is not entitled to the government contractor defense to Plaintiff's state law failure to warn claim. On the instant motion, Plaintiff argues Avondale is unable to produce evidence demonstrating the existence of a government specification regarding asbestos warnings— the first requirement for *Boyle* to apply in the context of a failure to warn claim.[102] In fact, the parties confirmed during oral argument that the federal government did not instruct Avondale to issue (or not issue) warnings to its employees about the dangers of asbestos.

Avondale argues in opposition that, to prevail on the first *Boyle* element, it need not prove the existence of a specification about warnings to employees specifically— instead, Avondale argues, under *Boyle*, it is sufficient to demonstrate the existence of a government specification requiring only the use of asbestos.[103] Put simply, Avondale argues the Court should ignore *Jowers* and instead apply the three elements of *Boyle* announced in its original context of a design defect claim. This argument, however, misses the point.[104] In *Boyle*—a design defect claim—the government contractor could take advantage of the *Boyle* defense by demonstrating the existence of a government specification requiring a certain design.[105] The government contractor's compliance with the government specification on the product design would shield the contractor from any *design defect liability*.[106] Indeed, in this case, if Plaintiff had brought a design defect claim against Avondale under state law, *Boyle* likely would step in to shield Avondale from

---

[102] R. Doc. 105-1 at p. 18.

[103] R. Doc. 140 at p. 18.

[104] This is further highlighted in the *In re Katrina Canal Breaches Litigation* case, where the Fifth Circuit stated "[r]easonably precise specifications for one aspect of a large project do not create an umbrella of protection for an entire project." 620 F.3d at 461. By extension, a reasonably precise specification requiring the use of asbestos does not create an umbrella of protection such that, where the government was silent on warnings, the contractor can avail itself of the *Boyle* defense to a state law claim for failure to warn.

[105] *Boyle*, 487 U.S. at 514.

[106] *Id.*

design defect liability. But that is not the claim Plaintiff brings against Avondale. Plaintiff brings, *inter alia*, a failure to warn claim,[107] and Avondale cannot demonstrate the existence of a government specification even remotely requiring Avondale to give or not to give its employees warnings. Under *Boyle*, *Jowers*, and *Broussard*, then, the government contractor defense does not shield Avondale from Plaintiff's state law failure to warn claim because the federal government had no hand in that decision, i.e., no governmental discretion was exercised. "There is no second-guessing here of a government decision, because none was made."[108] Thus, Avondale is unable to prove an essential element of its affirmative defense under *Boyle*,[109] and summary judgment is appropriate.

### B. Plaintiff is entitled to summary judgment that *Boyle* does not provide a defense to her failure to prevent the spread claim.

Plaintiff seeks summary judgment that Avondale is not entitled to the *Boyle* affirmative defense from any liability based on its failure to prevent the spread of asbestos by not providing adequate ventilation to minimize asbestos exposure and not implementing an asbestos decontamination policy or procedure to prevent asbestos from leaving Avondale's shipyard.[110] Plaintiff's failure to prevent the spread of asbestos claim boils down to a claim for failing to properly use and store asbestos at Avondale's shipyard.

Although the Fifth Circuit has not squarely applied *Boyle* in the context of a claim for failing to properly use and store asbestos, it is clear to the Court the rationale of *Boyle*, *Jowers*, and *Broussard* applies equally to this claim. Thus, three elements must be proven for Avondale to be entitled to the government contractor defense. First, Avondale must

---

[107] R. Doc. 105-1 at p. 7.
[108] *In re Katrina Canal Breaches Litigation*, 620 F.3d at n.10.
[109] *Jowers*, 617 F.3d at 352.
[110] R. Doc. 105-1 at p. 6.

prove the federal government exercised its discretion in approving reasonably precise specifications for the use and storage of asbestos. Second, Avondale must prove that the use and storage standards it complied with conformed to the federal government specifications. Third, Avondale must prove it warned the United States about dangers resulting from the specifications known to Avondale but not to the United States. The first element is at issue on the instant motion.[111]

During oral argument, Plaintiff argued the Walsh-Healey Act was not a reasonably precise government specification because it mandated only that the government contractor comply with minimum safety standards. Said differently, Plaintiff argues a minimum standard set by the government does not constitute a reasonably precise specification. During oral argument, Defendant argued, in substance, there were reasonably precise specifications regarding the use and storage of asbestos because the relevant government contracts incorporated by reference the Walsh-Healey Act.[112] Because it complied with the Walsh-Healey Act, Avondale argues, it cannot be subject to liability for Plaintiff's failure to prevent the spread claim.

The parties concede Avondale was subject to the Walsh-Healey Act, which Avondale points to as a reasonably precise government specification on the use and storage of asbestos. The contracts at issue incorporated the 1958 version of 41 U.S.C. §§ 35-45,[113] commonly referred to as the Walsh-Healey Act, which provides in pertinent

---

[111] Plaintiff argues the Court should add a threshold requirement that there be "tension" between the government's instruction/policy and state law imposing a stricter standard. If there is no tension, Plaintiff argues, *Boyle* should not apply. *Jowers* makes clear that such an added requirement is a misapplication of *Boyle*, because "the *Boyle* court found that demonstrating the first two elements of the defense would establish this conflict [or tension] as a matter of law." *Jowers*, 617 F.3d at 352.
[112] 41 U.S.C. § 35(c) (1958).
[113] R. Doc. 140 (sealed exhibits I and J).

part that:

> [N]o part of such contract will be performed nor will any of the materials, supplies, articles, or equipment to be manufactured or furnished under said contract be manufactured or fabricated in any plants, factories, buildings, or surroundings or *under working conditions which are unsanitary or hazardous or dangerous to the health and safety of employees engaged in the performance of said contract.*[114]

Relatedly, 41 C.F.R. § 50-204[115] codifies the broad mandate contained in 41 U.S.C. § 35(c) that government contracts cannot be performed under working conditions that are hazardous or dangerous to the health and safety of employees engaged in the performance of the contracts. These federal regulations also were incorporated by reference into the relevant government contracts.[116] The regulations plainly provide that the Walsh-Healey Act "expresses certain minimum safety and health standards"[117] and "[c]ompliance with the standards expressed in [the Walsh-Healey Act] will not relieve anyone from any obligation to comply with any more strict standard stemming from any other source whatsoever."[118] Thus, the government instruction on the use of storage of asbestos contained in the relevant contracts was, in substance, to comply with the Walsh-Healey Act[119]—but, if "any other source" provided a "more strict standard," the government contractor would not be relieved of its duty to comply with the stricter standard merely by complying with Walsh-Healey.[120]

"The first *Boyle* step requires that the government approved reasonably precise specifications. That entails both the existence of reasonably precise specifications and the

---

[114] 41 U.S.C. § 35(c) (1958) (emphasis added).
[115] The Court reviewed the 1965 version of 41 C.F.R. § 50-204. It appears the contracts at issue were executed in 1965.
[116] R. Doc. 140 (sealed exhibits I and J).
[117] 41 C.F.R. § 50-204.1 (a) (1965).
[118] 41 C.F.R. § 50-204.1 (e) (1965).
[119] The Walsh-Healey Act provides specific instructions about ventilation, exposure to asbestos, the need for washing facilities, material storage, and more. *See, e.g.,* 41 C.F.R. §§ 50-204.62, .86, .102, .136, .137, .138, .244, .275, and .288.
[120] 41 C.F.R. § 50-204.1 (e) (1965).

approval of those specifications by the government." "Although the two issues [of whether the specification was reasonably precise and whether it was approved by the government] are intertwined as elements of the first prong of *Boyle*, they are still two separate conditions that can be analyzed independently. If the specifications are not reasonably precise, it does not matter whether the imprecise specifications were properly approved: The first prong would not be satisfied."[121]

In the case at bar, the government's instruction on the use and storage of asbestos, by its own terms, "expresse[d] certain minimum safety and health standards"[122] The Fifth Circuit has held that a minimum standard set by the government does not constitute a reasonably precise specification under *Boyle*.[123] Specifically, in *Trevino v. General Dynamics Corp.*, a case in which families of Navy divers killed in a Navy submarine diving chamber brought a product liability action against manufacturer General Dynamics Corporation, the Fifth Circuit explained how the first *Boyle* element is not met when the government requires only compliance with "minimal or general standards established by the government."[124] Further, in *Jowers,* the Fifth Circuit determined the first *Boyle* element was not satisfied when the specification at issue was a minimum standard, and when there was evidence the government contractor had initially drafted the specification.[125] In this case, while there is no evidence Avondale had a hand in drafting the specifications at issue, reading *Trevino* and *Jowers* in harmony clarifies that the fact that the government contractor drafted the minimum standard in *Jowers* was merely an aggravating circumstance, as opposed to a necessary element.[126] This conclusion is

---

[121] *In re Katrina Canal Breaches Litigation*, 620 F.3d at n.9.
[122] 41 C.F.R. § 50-204.1 (a) (1965).
[123] *Trevino v. General Dynamics Corp.*, 865 F.2d 1474, 1480 (5th Cir. 1989).
[124] *Id.*
[125] *Jowers*, 617 F.3d at 354.
[126] *Id.*

consistent with sister circuits' application of the government contractor defense, in which, for example, one circuit held "[w]hen only minimal or very general requirements are set for the contractor by the United States the [government contractor defense] is inapplicable."[127]

Accordingly, under *Boyle*, in this case there exists no reasonably precise specification governing the use and storage of asbestos because the Walsh-Healey Act is only a "minimum safety and health standard." Indeed, "[c]ompliance with the standards expressed in [the Walsh-Healey Act] will not relieve anyone from any obligation to comply with any more strict standard stemming from any other source whatsoever."[128] The existence of a reasonably precise government specification on the use and storage of asbestos, an essential element of Avondale's defense under *Boyle*, has not been met. Thus, Avondale is not entitled to the government contractor defense on Plaintiff's claim for failure to prevent the spread of asbestos and summary judgment is appropriate.

## II. *Yearsley* immunity is not a defense to Plaintiff's claims.

Plaintiff also seeks summary judgment that Avondale is not entitled to *Yearsley* derivative sovereign immunity.[129] *Yearsley v. W.A. Ross Constr. Co.*[130] is widely recognized as the origin of derivative sovereign immunity for government contractors.[131] Derivative sovereign immunity protects government contractors from legal liability when their actions directed by the government give rise to an injury. Derivative sovereign

---

[127] *See, e.g.*, *McKay v. Rockwell Intern. Corp.*, 704 F.2d 444, 451 (9th Cir. 1983).
[128] 41 C.F.R. § 50-204.1 (e) (1965).
[129] R. Doc. 105-1 at p. 16.
[130] Many courts previously misinterpreted *Yearsley* as only applying in the context of a government contractor completing public works projects. The U.S. Supreme Court in *Campell-Ewald Co. v. Gomez*, in a footnote, clarified that *Yearsley* immunity is not limited to this context. 136 S. Ct. 663, 673 n.7 (2016).
[131] 309 U.S. 18 (1940). Unlike *Boyle*, *Yearsley* is rooted in ideas of sovereign immunity, as opposed to preemption.

immunity is not absolute.[132] In *Yearsley*, "petitioners sought to recover damages upon the ground that the respondent company'[s]" activity of constructing dikes in the Missouri River produced artificial erosion and washed away ninety-five acres of the petitioner's land.[133] The government contractor was operating under a contract with the U.S. Government authorized by Congress to improve navigation in the Missouri River.[134] Faced with litigation, the government contractor raised its contractual relationship with the government as a defense to liability.[135] The Supreme Court held "if this authority to carry out the project was validly conferred . . . there is no liability on the part of the contractor for executing [the government's] will."[136] Thus, two elements must exist before *Yearsley* applies: first, the work done must have been authorized and directed by the U.S. government; second, the authority must have been validly conferred on the contractor pursuant to an act of Congress.[137]

In *Yearsley*, the federal government authorized and directed the contractor's construction of the dikes pursuant to an act of Congress; thus, "there [was] no ground for holding [the government's] agent liable for simply acting under the authority . . . validly conferred. The action of the agent is 'the action of the government.'"[138] Conversely, when a government contractor acting on the government's behalf exceeds its authority, there is no immunity from resulting liability.[139]

Plaintiff and Avondale spend much of their briefing discussing whether *Yearsley* requires specific directives from the government in order to apply. Presumably, this is

---

[132] *Campell-Ewald Co.*, 136 S. Ct. at 672.
[133] 309 U.S. at 19.
[134] *Id.*
[135] *Id.*
[136] *Id.* at 20-21.
[137] *Id.* at 20.
[138] *Id.* at 22.
[139] *Id.* at 21.

because some circuits hold *Yearsley* is inapplicable if the government contractor is left discretion to carry out the contract,[140] while other courts have broadly applied the defense to cover even actions taken by the contractor that do not trace directly to a federal directive. Obviously, the more specific the government is in its directives, the less discretion the contractor is left with. Just last year, the Fifth Circuit seemingly fell somewhere on the broader-application-side of the issue in *Taylor Energy Company, L.L.C. v. Lutrell*, finding, under the facts of that case, the government contractor exercised some discretion over the work performed but that this did not negate its immunity under *Yearsley*.[141]

In *Taylor Energy Company, L.L.C.*, Taylor Energy leased and operated oil wells and production platforms in the Gulf of Mexico.[142] When Hurricane Ivan hit the region, it caused a massive seafloor to collapse, toppling Taylor Energy's platform.[143] As a result, oil leaked across the ocean floor for over a decade.[144] Some years later, the Coast Guard contracted Couvillion Group, L.L.C. ("Couvillion") to provide labor, equipment, and materials to clean up the oil—all at Taylor Energy's expense as the "responsible party."[145] Couvillion estimated a $3 million contract price.[146] In reality, that $3 million estimate turned into a $40 million bill, and Taylor Energy sued.[147] Taylor Energy argued, *inter alia*, a lack of federal oversight over Couvillion's work enabled it to overcharge.[148] Accordingly, Taylor Energy sought tort damages and equitable relief for Couvillion's trespass and

---

[140] *Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720, 732 (9th Cir. 2015). The Ninth Circuit has explained *Yearsley* immunity is "limited to cases in which a contractor had no discretion in the design process and completely followed government specifications." *Id.*
[141] *Taylor Energy Company, L.L.C. v. Lutrell*, 3 F.4th 172, 176 (5th Cir. 2021).
[142] *Id.* at 173.
[143] *Id.*
[144] *Id.* at 173-74.
[145] *Id.*
[146] *Id.* at 174.
[147] *Id.* at 174.
[148] *Id.*

unauthorized activities arguing Couvillion was not acting pursuant to specific government directives.[149] Taylor Energy argued Couvillion was not entitled to derivative sovereign immunity because Couvillion's actions were not authorized and directed by the Government, a requirement for the immunity to attach.[150] In response, Couvillion argued it was protected by *Yearsley* immunity.[151] The district court summarily found *Yearsley* applicable, and Taylor Energy appealed.[152]

On appeal, the Fifth Circuit first recognized that "[f]or actions to be authorized and directed by the Government, the contractor's actions should comply with federal directives."[153] In *Taylor Energy*, the government's directives were contained in a basic ordering agreement, authorizations to proceed, and a statement of work.[154] The Fifth Circuit highlighted the specificity of the federal government's directives and the existence of federal oversight.[155] There was uncontroverted evidence the contractor did, in fact, comply with the government's directives. In light of these facts, the Fifth Circuit held, even if Couvillion retained *some* discretion on how to fulfill his obligations under the contract, the district court did not err in finding *Yearsley* immunity available.[156]

*Taylor Energy* is factually distinguishable from the case at bar because of the Fifth Circuit's focus on the specificity of the government's directives and existence of extensive federal oversight in that case, which justified its conclusion that a total lack of contractor discretion was not required before *Yearsley* may apply. Be that as it may, the Court need not decide whether *Offshore Oil* does or does not apply to the case before it because

---

[149] *Id.* at 174-75.
[150] *Id.* at 175.
[151] *Id.*
[152] *Id.*
[153] *Id.* at 175-76.
[154] *Id.* at 176.
[155] *Id.*
[156] *Id.*

*Yearsley* immunity is inapplicable for a separate reason. Specifically, and on an issue neither party explored in its briefing, the Fifth Circuit held in *Ackerson v. Bean Dredging, LLC* that separate acts of negligence by government contractors are not shielded by *Yearsley*.[157]

In *Ackerson*, plaintiffs brought suit against government contractors who dredged protective wetlands in the Mississippi River Gulf Outlet ("MRGO").[158] The plaintiffs alleged, *inter alia*, "the MRGO project caused an amplification of the storm surge in the New Orleans region during Hurricane Katrina, undermining the levees and flood walls . . . that breached and flooded" the region.[159] The plaintiffs alleged Congress was negligent in creating and maintaining the MRGO, not separate acts of negligence by the government contractors. The government contractors argued they were entitled to a form of derivate sovereign immunity, meaning the claims should be barred.[160] The district court agreed.[161] The plaintiffs appealed the district court's grant of judgment on the pleadings, arguing that (1) the district court should have dismissed their claims *without* prejudice because *Yearsley* is jurisdictional in nature, and (2) *Yearsley* requires an agency relationship, not merely a contractual relationship with the federal government.[162]

In affirming the district court, the Fifth Circuit first held *Yearsley* does not establish a jurisdictional bar, but rather is a defense to liability because the Supreme Court's decision "itself countenances against its application to deprive the federal courts of jurisdiction."[163] "*Yearsley* does not discuss sovereign immunity or otherwise address

---

[157] 589 F.3d 196 (5th Cir. 2009).
[158] *Id.* at 202.
[159] *Id.* at 203.
[160] *Id.* at 202.
[161] *Id.*
[162] *Id.*
[163] *Id.* at 207-08.

the court's power to hear the case. Instead, the [Supreme] Court affirmed the reversal of the district court's judgment on the grounds announced in *Yearsley*."[164]

Second, the Fifth Circuit clarified that, although *Yearsley* used the word "agent" when discussing the application of derivative sovereign immunity, *Yearsley* does not require "a traditional agency relationship with the government;" instead, the existence of a contractual relationship with the government is sufficient.[165] In doing so, the Fifth Circuit highlighted that "[t]he Supreme Court has not abrogated or overturned *Yearsley*," and applied the elements of derivative sovereign immunity to the facts of *Ackerson*.[166]

In *Ackerson*, "the plaintiffs did not allege that the contractor defendant 'exceeded his authority or that it was not validly conferred,'" both of which are requirements for *Yearsley* immunity to attach to the government contractor.[167] "Instead, the [p]laintiffs' allegations attack the entire MRGO project" because they allege the MRGO project "dramatically increased the region's vulnerability to hurricanes and tropical storms" and that the MRGO "created an environmental disaster."[168] Because the allegations "attack[ed] Congress's policy of creating and maintaining the MRGO," as opposed to a "*separate act of negligence* by the" contractors, the district court did not err in finding *Yearsley* applicable.[169] Critically, under *Ackerson*, *Yearsley* does not provide a defense to claims for separate acts of negligence brought against government contractors.[170] Because the Court has an obligation to apply the correct law, regardless of whether the parties raise it, the Court must apply this binding Fifth Circuit precedent in this case.

---

[164] *Id.*
[165] *Id.* at 205.
[166] *Id.* at 206.
[167] *Id.* at 206-07 (citing *Yearsley*, 309 U.S. at 21).
[168] *Id.* at 207.
[169] *Id.* (emphasis added).
[170] *Id.*

Since *Ackerson*, the Fifth Circuit has not elaborated on what constitutes a "separate act of negligence" by a government contractor, though out-of-circuit district courts relying on *Ackerson* have. In the absence of additional guidance from the Fifth Circuit, the Court finds these out-of-circuit cases persuasive in its analysis. In *Cabalce v. VSE Corp.*, the U.S. District Court for the District of Hawaii was faced with state law claims against a government contractor for negligence, wrongful death, ultrahazardous activity, and premises liability arising from the death of workers killed in a fire and explosion while handling a large cache of government-seized fireworks.[171] The district court, citing *Ackerson*, determined *Yearsley* immunity did not shield the government contractor from suit because "derivative sovereign immunity is not available to contractors who act negligently in performing their obligations under the contract."[172] This limitation on the *Yearsley* defense, the *Cabalce* court reasoned, recognized that "the government does not become the conduit of its immunity in suits against its agents or instrumentalities merely because they do its work. Thus, *Yearsley* does not abrogate 'the principle that an agent is liable for his own torts [which] is an ancient one and applies even to certain acts of public officers or public instrumentalities.'"[173] Accordingly, the claims against the government contractor for "failing to eliminate known risks of harm, failing to warn Plaintiffs, failing to provide a safe workplace, failing to properly manage and store the fireworks, and failing to ensure compliance with laws and regulations regarding explosives," were found to be "allegations of negligence" in the performance of the government contracts that constituted a "separate act of negligence," "render[ing] the defense inapplicable."[174]

---

[171] 922 F.Supp.2d 1113, 1116 (D. Hawaii 1/13/2013).

[172] *Id.* at 1125 (internal quotations omitted) (citing *Ackerson*, 589 F.3d at 207).

[173] *Id.* (citing *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 687 (1949)) (quoting *Brady v. Roosevelt S.S. Co.*, 317 U.S. 575, 580 (1943) (alteration retained).

[174] *Id.* at 1127.

In *In re Fort Totten Metrorail Cases Arising out of the Events of June 22, 2009* ("*Fort Trotten*"), the U.S. District Court for the District of Columbia similarly determined that "derivative sovereign immunity is not available to contractors who act negligently in performing their obligations under the contract," relying on the Fifth Circuit's decision in *Ackerson*.[175] *Fort Trotten* involved a collision between two Washington Metropolitan Area Transit Authority trains, causing severe injuries to passengers.[176] After the collision, accident victims sued the manufacturer of the trains, bringing various negligence claims, including one for failure to warn.[177] The manufacturer argued it was entitled to *Yearsley* immunity as a government contractor because all the harms traced to the government's decision to sequence modules, albeit in a negligent fashion.[178] The district court disagreed with that characterization of the claims, and instead determined the claims against the manufacturer were predicated on the manufacturer's own negligence in performing its contractual obligations, as opposed to government directives.[179] "Derivative sovereign immunity under *Yearsley* does not shield such claims."[180] Moreover, the manufacturer did not comply with its contractual obligations, meaning it was, for a separate reason, not entitled to *Yearsley* immunity because it did not comply with the government's explicit directives.[181]

Applying *Taylor Energy*, *Ackerson*, *Cabalce*, and *Fort Trotten* to the case at bar, unlike in *Taylor Energy* and *Ackerson*, it is clear Plaintiff's claims do not attack the

---

[175] *Fort Trotten*, 895 F.Supp.2d 48, 74 (D.D.C. 9/5/12) (citing *Ackerson*, 589 F.3d at 207).
[176] *Id.* at 55.
[177] *Id.* at 71.
[178] *Id.* The *Fort Trotten* court analyzed whether *Yearsley* applied beyond federal government contractors to state-level contractors in this case, which is not before the Court here. Nevertheless, the discussion of the elements of *Yearsley* are persuasive in light of the court's reliance on *Ackerson*.
[179] *Id.* at 75.
[180] *Id.*
[181] *Id.*

government's policy of requiring the use of asbestos in Navy vessels and the like,[182] but instead, as in *Cabalce* and *Fort Trotten*, Plaintiff's claims trace to Avondale's alleged decision not to warn its employees of the dangers of asbestos exposure and failure to both provide adequate ventilation to minimize asbestos exposure and implement an asbestos decontamination policy or procedure to prevent asbestos from leaving Avondale's shipyard.[183] These claims boil down to a broad claim against Avondale for negligently carrying out its government contracts, which is a "separate act of negligence" under *Ackerson*, as interpreted by *Cabalce* and *Fort Trotten*. Certainly, the federal government required Avondale to use asbestos in manufacturing the vessels at issue. This is undisputed. But after the federal government made that decision, in carrying out its contracts, Avondale allegedly chose not to warn its employees of the dangers of asbestos or put other measures in place to prevent the spread of asbestos. Government contractors do not share the federal governments unqualified immunity from liability and litigation. Thus, the Court finds *Yearsley* is not applicable to Plaintiff's claims for failure to warn of the dangers of asbestos and failure to prevent the spread of asbestos, and Plaintiff is entitled to summary judgment.

**<u>CONCLUSION</u>**

**IT IS ORDERED** that Plaintiff's motion for summary judgment[184] is **GRANTED**.

**New Orleans, Louisiana, this 2nd day of September, 2022.**

_Susie Morgan_
_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[182] *Ackerson*, 589 F.3d at 207.
[183] R. Doc. 105-1 at p. 6.
[184] R. Doc. 105.