# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ORA JEAN ADAMS,**<br>    Plaintiff | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-694** |
| **EAGLE, INC. ET AL.,**<br>    Defendants | **SECTION "E" (4)** |

## ORDER AND REASONS

Before the Court is a motion for summary judgment filed by Third-Party Defendant Bayer CropScience, Inc. ("Amchem") against Third-Party Plaintiff Huntington Ingalls, Inc ("Avondale").[1] The motion was filed on July 19, 2022,[2] and set for submission on August 3, 2022.[3] Avondale filed an opposition on July 26, 2022.[4] On August 2, 2022, Amchem filed a reply.[5] On August 9, 2022, the Court ordered Avondale to file a revised memorandum in opposition pursuant to Rule 56(e)(1).[6] On August 12, 2022, Avondale timely filed a revised memorandum in opposition.[7]

## BACKGROUND

The background has been set forth extensively in the Court's September 2, 2022, Order and Reasons.[8] To briefly recap, this personal injury suit is based on Plaintiff's alleged exposure to asbestos.[9] On June 17, 2020, Plaintiff filed a petition for damages in Civil District Court, Parish of Orleans, State of Louisiana, against several Defendants,

---

[1] R. Doc. 117.
[2] *Id.*
[3] *Id.*
[4] R. Doc. 129.
[5] R. Doc. 147; R. Doc. 153.
[6] R. Doc. 164.
[7] R. Doc. 174.
[8] R. Doc. 204.
[9] R. Doc. 1-2 at p. 2, ¶ 3.

1

including Avondale.[10] On August 11, 2020, Avondale filed its answer with incorporated affirmative defenses, third-party claims, and crossclaims.[11] Relevant to the instant motion,[12] Avondale brought a third-party complaint against Amchem as an alleged "miner, manufacturer, seller, distributor, supplier, installer, and/or user of asbestos products."[13] Avondale seeks to recover a virile share contribution from Amchem should Avondale be cast in judgment because Avondale argues "the negligence, fault, and defective products of [Amchem] are the proximate cause of Plaintiff's alleged harm, if any."[14]

On July 19, 2022, Amchem filed a motion for summary judgment.[15] Amchem seeks summary judgment on the grounds that Avondale "has no factual or medical evidence to support the allegations that [Plaintiff Adams] was exposed to respirable asbestos fibers from any asbestos-containing product attributable to Amchem, much less that an Amchem product was a substantial contributing factor to the development of Mrs. Adams' lung cancer."[16]

## MOTION FOR SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[17] "An issue is material if its resolution could affect the outcome of the action."[18] When assessing whether a material factual dispute exists, the Court considers "all of the

---

[10] *See id.* at pp. 1-2.
[11] R. Doc. 4-1 (beginning on p. 33).
[12] R. Doc. 117.
[13] R. Doc. 117-1 at pp. 1-2; R. Doc. 4-1 at pp. 8-15.
[14] R. Doc. 4-1 at p. 15.
[15] R. Doc. 117.
[16] *Id.* at p. 1.
[17] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[18] *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).

evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[19] All reasonable inferences are drawn in favor of the non-moving party.[20] While all reasonable inferences must be drawn in favor of the non-moving party, the non-moving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions or "only a scintilla of evidence."[21] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law.[22]

"Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . the material fact may be presented in a form that would not, in itself, be admissible at trial."[23]

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."[24] To satisfy Rule 56's burden of production, the moving party must do one of two things: "the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim" or "the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim."[25] If the moving party fails to carry this burden, the

---

[19] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[20] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[21] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).
[22] *Hibernia Nat. Bank v. Carner*, 997 F.2d 94, 98 (5th Cir. 1993) (citing *Amoco Prod. Co. v. Horwell Energy, Inc.*, 969 F.2d 146, 147–48 (5th Cir. 1992)).
[23] *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017) (citations omitted).
[24] *Celotex*, 477 U.S. at 323.
[25] *Id.* at 331.

motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the non-moving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[26]

If the dispositive issue is one on which the non-moving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the non-movant's claim, or (2) affirmatively demonstrating that there is no evidence in the record to establish an essential element of the non-movant's claim.[27] If the movant fails to affirmatively show the absence of evidence in the record, its motion for summary judgment must be denied.[28] Thus, the non-moving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[29] "[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[30] Summary judgment is not automatic merely

---

[26] *Id.* at 322–24.
[27] *Id.* at 331–32 (Brennan, J., dissenting).
[28] *See id.* at 332.
[29] *Id.* at 332–33. The burden would then shift back to the movant to demonstrate the inadequacy of the evidence relied upon by the non-movant. Once attacked, "the burden of production shifts to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)." *Id.* at 332–33, 333 n.3.
[30] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)).

because the motion is unopposed—the Court must determine whether the moving party has shown they are entitled to judgment as a matter of law.[31]

## FACTS

### I. Undisputed Facts

The following facts are undisputed. On June 17, 2020, Plaintiff Ora Jean Adams filed the instant action in Civil District Court for the Parish of Orleans, and the suit was subsequently removed to this Court.[32] Plaintiff did not sue Amchem.[33] Instead, Avondale filed a third-party demand against Amchem as a manufacturer of asbestos products, including adhesives, coatings, sealants, and mastics.[34] Plaintiff Adams was deposed on November 11, 2020.[35] Plaintiff Adams did not identify any product manufactured by Amchem during her deposition.[36] Plaintiff's husband, Lionel Adams, was deposed on February 22, 2022.[37]

Amchem products have a viscosity or consistency ranging from a thick liquid, to honey, glue, or paste.[38] Amchem manufactured non-asbestos containing mastics, coatings, adhesives, and sealants, as well as products containing chrysotile asbestos.[39] The Environmental Protection Agency exempted products that encapsulated with binder materials, such as Amchem's products, from the prohibition against spraying products that contain asbestos.[40] In 1972, OSHA also exempted such products from the

---

[31] *See, e.g.*, Johnson v. Pettiford, 442 F.3d 917, 918 (5th Cir. 2006); FED. R. CIV. P. 56(a).
[32] R. Doc. 117-3 at p. 1; R. Doc. 174-1 at p. 1.
[33] *Id.*
[34] *Id.*
[35] *Id.*
[36] *Id.*
[37] *Id.*
[38] *Id.*
[39] R. Doc. 117-3 at p. 2; R. Doc. 174-1 at p. 2.
[40] *Id.*

5

requirement that warnings be placed on asbestos-containing products.[41] The OSHA exemption is still in effect.[42] Finally, on June 1, 1976, Amchem sold the assets of its Benjamin Foster Division to H.B. Fuller Company and ceased to manufacture and sell Foster products.[43]

## II. Disputed Facts

Avondale argues Amchem's motion for summary judgment should be denied because there are disputed issues of material fact. First, Amchem argues it is an undisputed fact that neither Mr. Adams nor Avondale identified any Amchem products, much less one containing asbestos, to which Mr. Adams and Plaintiff Adams may have been exposed.[44] Avondale denies this assertion, and, instead, provides evidence Mr. Adams worked in engine rooms in the presence of insulators who used an asbestos-containing adhesive produced by Amchem that, when dried, crushed, or swept, would release significant levels of asbestos fibers into the air.[45]

Second, Amchem states it is an undisputed fact that it manufactured mastics, coatings, and sealants, rather than insulation, which were sold pre-mixed, applied wet, and were not friable.[46] Avondale denies this statement.[47] Although Avondale denies the statement as a whole, a review of the exhibits cited by Avondale reveals it produced evidence that contests only the portion of the statement contending the Amchem products are not friable.[48] The Court construes Avondale's denial as an admission in part and denial in part. Avondale cites to an Amchem technical information bulletin, which states

---

[41] *Id.*
[42] *Id.*
[43] *Id.*
[44] R. Doc. 117-3 at p. 1.
[45] R. Doc. 174-1 at p. 2-3; *see also* R. Doc. 174-3 at pp. 93, 95, 97-98; R. Doc. 174-9 at p. 67.
[46] R. Doc. 117-3 at p. 2.
[47] R. Doc. 174-1 at p. 2.
[48] *Id.*; *see also* R. Doc. 174-4 at pp. 11-25; 174-6 at p. 1.

6

adhesive 81-27 may dust in its dried form, evidence it is friable when dried.[49]

Third, Amchem included in its statement of undisputed material facts a statement that any asbestos used in Amchem products was "encapsulated and bound within the product by various binders, resins, asphalt, or plasticizers."[50] Avondale denies this statement is true, contending the product did not remain encapsulated and bound, but instead it "would become hard and brittle, was subject to dusting, and would turn to dust or powder when walked on, crushed under foot, or scraped up by cleanup crews in the engine rooms of the ships aboard which Mr. Adams worked."[51] In addition to Mr. Adams' testimony that the product would turn to dust during cleanup, in support of its statement, Avondale cites to the Amchem technical information bulletin which states that Amchem adhesive 81-27 is not thermoplastic and may dust in its dried form.[52]

Finally, Amchem states it is undisputed that Avondale cannot demonstrate Plaintiff Adams inhaled asbestos fibers from an Amchem product and the fibers were sufficient to constitute a substantial contributing factor.[53] Avondale denies these assertions, relying on the depositions of two experts who conclude asbestos-containing adhesive was a substantial contributing factor in Plaintiff Adams' injury.[54] Avondale concludes Mr. Adams was exposed to significant levels of asbestos from Amchem products, and Mr. Adams' exposure was a substantial contributing factor in causing Plaintiff Adams' lung cancer.[55]

---

[49] *Id.* at n.3; *see also* R. Doc. 174-6 at p. 1.
[50] R. Doc. 117-3 at p. 2.
[51] R. Doc. 174-1 at p. 3; *see also* R. Doc. 174-6 at p. 1.
[52] R. Doc. 174-1 at p. 3; *see also* R. Doc. 174-3 at pp. 93, 95, 97-98; R. Doc. 174-6 at p. 1; R. Doc. 174-9 at p. 67.
[53] R. Doc. 117-3 at p. 2.
[54] R. Doc. 174-1 at p. 3; *see also* R. Doc. 174-16 at p. 52; R. Doc. 174-17 at p. 48.
[55] *Id.*

7

## **LAW AND ANALYSIS**

Amchem's instant motion calls into doubt Avondale's ability to prove the existence of the cause-in-fact element of its negligence and strict liability claim against Amchem.[56] To prevail on the cause-in-fact element in an asbestos case like this one, when multiple causes of exposure are alleged, it must be proven[57] that the plaintiff (1) had significant exposure to asbestos attributable to the defendant and (2) received an injury that was "substantially caused" by that exposure.[58] The former requirement mandates a plaintiff to identify a particular asbestos containing product and prove that she was exposed to that product.[59] The latter requirement is referred to as a "substantial factor" test by Louisiana courts,[60] and involves a showing of both general and specific causation. "General causation is whether a substance is capable of causing a particular injury or condition in the general population, while specific causation is whether a substance caused a particular individual's injury."[61]

Because of the lengthy latency period between exposure to asbestos and manifestation of the disease, the cause-in-fact element is noted as the "premier hurdle" faced by plaintiffs in asbestos litigation.[62] Notwithstanding the difficulty of proof involved, Avondale's burden of proof against Amchem is not relaxed or reduced because of difficulty that might ensue in proving the contribution of Amchem's product to Plaintiff

---

[56] R. Doc. 117-1 at p. 15.
[57] The evidence can be either direct or circumstantial. *Rando v. Anco Insulations, Inc.*, 16 So.3d 1065, 1089 (La. 2009).
[58] *Id.* at 1088.
[59] *Id.*
[60] *Id.* (explaining that, when multiple cause of injury are present, a defendant's conduct is a cause-in-fact if it is a substantial factor generating plaintiff's harm).
[61] *Seaman v. Seacor Marine, L.L.C.*, 326 F. App'x 721, 722 (5th Cir. 2009) (quoting *Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 351 (5th Cir. 2007)).
[62] *Rando,* 16 So.3d at 1088.

Adams' injury.[63]

The Fifth Circuit has explained "even if the plaintiff was only exposed to asbestos for a 'short period for an employer, and he had longer exposure working for others, it cannot be said the relatively short asbestos exposure was not a substantial factor in causing his mesothelioma.'"[64] "To defeat an asbestos defendant's motion for summary judgment, a plaintiff 'need only show that a reasonable jury could conclude that it is more likely than not that plaintiff inhaled defendant's asbestos fibers, even if there were only "slight exposures."'"[65]

Amchem has the initial burden of proof on summary judgment and has failed to demonstrate there are no genuine issues of material fact. Indeed, the Court finds there are genuine issues of fact as to whether Mr. Adams was exposed to asbestos-containing Amchem products at Avondale and whether the Amchem products were a substantial cause of Plaintiff Adams' injury. These are the elements of cause-in-fact essential to an asbestos exposure case, and, as a result, the disputed facts are material.

In the instant action, Avondale has identified a single Amchem product it contends resulted in Ms. Adams exposure.[66] This product, Benjamin Foster Fibrous Adhesive 81-27 ("81-27"), is an asbestos-containing adhesive used to bind asbestos cloth with high temperature insulation.[67]

As to element one, Amchem argues Avondale cannot demonstrate Mr. Adams was exposed to 81-27 because no eyewitness can place Mr. Adams near the product and Mr.

---

[63] *Id.* at 1091.
[64] *Cortez v. Lamorak Ins. Co.*, No. 20-2389, 2022 WL 2714111, at *12 (E.D. La. July 13, 2022) (quoting *Williams v. Boeing Co.*, 23 F.4th 507, 512 (5th Cir. 2022)).
[65] *Id.* (quoting *Held v. Avondale Indus., Inc.*, 672 So. 2d 1106, 1109 (La. App. 1996)).
[66] R. Doc. 174 at pp. 4-5.
[67] *Id.*

Adams himself did not identify the product by name.[68] In opposition, Avondale relies on Mr. Adams' own testimony that he worked around adhesive that came premixed, matching the description of the Amchem products.[69] Avondale also relies on the testimony of several Avondale employees. As in *Williams*, Avondale relies on the same testimony by Luther Dempster, who opined the Amchem adhesive was used on "just about everything that was built at Avondale."[70] Avondale cites to the testimony of Donald Rome, a pipefitter, who testified Amchem adhesive was used by insulators aboard all ships at Avondale and specifically LASH ships during the period of Mr. Adams' employment.[71] In his testimony, Mr. Rome identified Amchem's asbestos-containing adhesive, product 81-27, and described it with accuracy.[72] Finally, Mr. Adams' work as a pipefitter put him near insulation work, where the adhesive would have been used.[73] Mr. Adams testified he would do his work as a pipefitter and the insulators would follow right behind him.[74]

As to element two, Amchem argues Avondale cannot demonstrate Plaintiff Adams exposures to 81-27 were a substantial factor in causing her injury.[75] Amchem contends Mr. Adams could not have carried the premixed adhesive home to Plaintiff Adams because Mr. Adams, by his own admission, never got the premixed adhesive on his clothing.[76] However, Avondale relies on the testimony of Mr. Adams in which he describes the cleanup of the dried adhesive creating dust which would then, "[w]ithout any doubt," get on his clothes and travel home with him to Plaintiff Adams, creating a genuine issue

---

[68] R. Doc. 153 at pp. 2-4.
[69] R. Doc. 174 at p. 3; *see also* R. Doc. 174-3 at p. 93.
[70] R. Doc. 174 at p. 7; *see also* R. Doc. 174-9 at pp. 66-68.
[71] R. Doc. 174 at pp. 8-9.
[72] *Id.* at p. 8.
[73] R. Doc. 174-3 at p. 76.
[74] *Id.*
[75] R. Doc. 153 at pp. 6-9.
[76] *Id.* at p. 4.

10

of material fact as to whether Mr. Adams carried the product home.[77] Moreover, Avondale relies on the expert testimony of Dr. Brent Staggs, M.D. who concluded "exposures from that adhesive product would be a substantial contributing cause of Mrs. Adams' lung cancer."[78]

Another section of this Court recently considered a similar motion for summary judgment in *Williams et al. v. Huntington Ingalls Industries, et al.*[79] In *Williams*, Amchem sought summary judgment, arguing Avondale and the plaintiff could provide nothing more than speculation that the plaintiff's husband was exposed to Amchem's product, and the product was a substantial contributing factor of the plaintiff's mesothelioma.[80] The court primarily relied on two pieces of evidence put forth by Avondale to reach its decision.[81] First, Avondale pointed to the testimony of a fact witness, another Avondale employee who had worked with the plaintiff's husband, in which he described the plaintiff's husband working near products that match the description of Amchem products.[82] The witness described the plaintiff's husband cleaning up "a glue-like substance applied to insulators . . . [that] came pre-mixed in a five-gallon tub."[83] Further, the witness described the plaintiff's husband scraping the glue-like substance off of his shoes, creating dust.[84] Second, Avondale relied on testimony by an Avondale insulator and foreman, Luther Dempster, who opined Amchem products were used on "just about everything that was built at Avondale."[85]

---

[77] R. Doc. 174 at p. 3.
[78] R. Doc. 174-17 at p. 48.
[79] No. 19-1218, 2022 WL 425050, at *1 (E.D. La. Feb. 11, 2022).
[80] *Id.*
[81] *Id.* at *3-4.
[82] *Id.* at *1.
[83] *Id.*
[84] *Id.*
[85] *Id.*

On the basis of this evidence, the court in *Williams* held there were genuine issues of material fact as to whether the plaintiff was exposed to Amchem products because of her husband's alleged exposure to such products at Avondale and as to whether the exposure was a substantial factor in causing the plaintiff's injury.[86] The court reasoned, as to element one, "the evidence may not identify Amchem's 81-27 adhesive by name, but there is sufficient circumstantial evidence of proximity to the product to withstand summary judgment."[87] As to element two, the court recognized "[a]ny non-trivial exposure to asbestos is deemed a substantial factor and a cause of mesothelioma" and found that, in the light most favorable to Avondale, the facts suggest Amchem products were "a non-trivial exposure that was more likely than not a substantial factor of [the plaintiff's] mesothelioma."[88] The Court finds *Williams* highly persuasive in this case.

In opposition to Amchem's motion for summary judgment, Avondale has proffered evidence that is markedly similar to that in *Williams*. The court finds Avondale has presented compelling circumstantial evidence to show there are genuine issues of material fact as to both elements of the cause-in-fact analysis.

## CONCLUSION

**IT IS ORDERED** that Defendant's motion for summary judgment[89] is **DENIED**.

**New Orleans, Louisiana, this 7th day of September, 2022.**

*/s/ Susie Morgan*
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[86] *Id.* at *3-4.
[87] *Id.* at *3.
[88] *Id.* at *4.
[89] R. Doc. 117.