UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ORA JEAN ADAMS,<br>Plaintiff | CIVIL ACTION |
| VERSUS | NO. 21-694 |
| EAGLE, INC. ET AL.<br>Defendants | SECTION "E" (4) |

### ORDER AND REASONS

Before the Court is a motion for partial summary judgment filed by Hopeman Brothers, Inc. ("Defendant" or "Hopeman") against Ora Jean Adams ("Plaintiff") and Huntington Ingalls, Inc. ("Avondale").[1] Plaintiff and Avondale oppose the motion.[2] Hopeman filed a reply.[3]

### BACKGROUND

The facts and procedural history underlying this case are set forth extensively in the Court's September 2, 2022 Order and Reasons.[4] To briefly recap, this personal injury suit is based on Plaintiff's alleged exposure to asbestos.[5] Plaintiff's husband ("Mr. Adams") worked at Avondale from approximately 1972 to 1979 as a pipefitter and welder on various vessel construction projects.[6] Relevant to the instant motion, Plaintiff contends Hopeman was an Avondale subcontractor that performed marine carpentry or "joiner" work during the period in which Mr. Adams worked at Avondale.[7] Under its contracts with Avondale, Hopeman provided both marine carpentry services and the

---
[1] R. Doc. 111.
[2] R. Doc. 171 (Plaintiff's opposition); *see also* R. Doc. 173 (Avondale's opposition).
[3] R. Doc. 158.
[4] R. Doc. 204.
[5] R. Doc. 1-2 at p. 2, ¶ 3.
[6] R. Doc. 1 at p. 3.
[7] R. Doc. 171 at p. 2.

1

materials necessary to perform the work.[8] Wayne Manufacturing Corporation ("Wayne"), a now-dissolved Virginia Corporation, was a wholly-owned subsidiary of Hopeman during the relevant period.[9] Hopeman regularly purchased and supplied Wayne with Micarta laminate manufactured by Westinghouse and Marinite board manufactured by Johns-Manville, both products containing asbestos.[10] Wayne glued the Micarta laminate to the Marinite board and sent the composite wallboards to Hopeman for installation on vessels.[11] During the installation process, Plaintiff alleges Hopeman workers cut the wallboards, generating dust that stayed on Plaintiff's husband's work clothes until he returned home.[12] Plaintiff was exposed to asbestos fibers when she washed Mr. Adams' clothes.[13] Plaintiff alleges, *inter alia*, this exposure was a cause of her ultimate diagnosis of asbestos-related lung cancer on May 19, 2019.[14]

On June 17, 2020, Plaintiff filed a petition for damages in Orleans Parish Civil District Court against several Defendants, including Avondale.[15] On August 11, 2020, Avondale filed its answer with incorporated affirmative defenses, third-party claims, and crossclaims.[16] Relevant here, Avondale asserted a third-party claim against Hopeman.[17] Thereafter, Avondale removed Plaintiff's suit to federal court on April 5, 2021.[18] Once in federal court, Plaintiff filed an amended complaint, naming Hopeman as a direct defendant.

---

[8] *Id.*
[9] R. Doc. 171-5 at p. 9.
[10] R. Doc. 171 at p. 2.
[11] *Id.*
[12] R. Doc. 36.
[13] *Id.*
[14] R. Doc. 1-2 at p. 2, ¶ 3; *see also* R. Doc. 36.
[15] R. Doc. 1-2 at pp. 1-2.
[16] R. Doc. 4-1 (beginning on p. 33).
[17] R. Doc. 4-1 at p. 41, ¶ 8.
[18] R. Doc. 1.

Plaintiff's claims against Hopeman are based on negligence and strict liability.[19] Plaintiff alleges Hopeman is strictly liable as manufacturer and/or professional vendor of asbestos containing products.[20]

On July 19, 2022, Hopeman filed the instant motion for partial summary judgment.[21] Hopeman seeks a ruling from this Court that it cannot be held strictly liable under Louisiana law because it is neither a "manufacturer" of asbestos containing products nor a "professional vendor."[22] Plaintiff opposes the motion on both grounds.[23] Avondale opposes the motion only on the professional vendor issue, but "does not oppose Hopeman Brothers' Motion for Partial Summary Judgment on the issue of whether it was a manufacturer of asbestos-containing products."[24]

**MOTION FOR SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[25] "An issue is material if its resolution could affect the outcome of the action."[26] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[27] All reasonable inferences are drawn in favor of the non-moving party.[28] While all reasonable inferences must be drawn in favor of the non-moving party, the non-

---

[19] R. Doc. 36.
[20] *Id.*
[21] R. Doc. 111.
[22] *Id.*
[23] R. Doc. 171.
[24] R. Doc. 173 at p. 1 n.1.
[25] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[26] *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[27] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[28] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

moving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions or "only a scintilla of evidence."[29] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law.[30]

"Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . the material fact may be presented in a form that would not, in itself, be admissible at trial."[31]

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."[32] To satisfy Rule 56's burden of production, the moving party must do one of two things: "the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim" or "the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim."[33] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the non-moving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[34]

---

[29] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).
[30] *Hibernia Nat. Bank v. Carner*, 997 F.2d 94, 98 (5th Cir. 1993) (citing *Amoco Prod. Co. v. Horwell Energy, Inc.*, 969 F.2d 146, 147–48 (5th Cir. 1992)).
[31] *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017) (citations omitted).
[32] *Celotex*, 477 U.S. at 323.
[33] *Id.* at 331.
[34] *Id.* at 322–24.

4

If the dispositive issue is one on which the non-moving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the non-movant's claim, or (2) affirmatively demonstrating that there is no evidence in the record to establish an essential element of the non-movant's claim.[35] If the movant fails to affirmatively show the absence of evidence in the record, its motion for summary judgment must be denied.[36] Thus, the non-moving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[37] "[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[38]

## **FACTS**

### I. Undisputed Facts

The following facts are undisputed. Plaintiff Ora Jean Adams filed suit against Hopeman, among others, alleging secondary household asbestos exposure as a result of

---

[35] *Id.* at 331–32 (Brennan, J., dissenting).
[36] *See id.* at 332.
[37] *Id.* at 332–33. The burden would then shift back to the movant to demonstrate the inadequacy of the evidence relied upon by the non-movant. Once attacked, "the burden of production shifts to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)." *Id.* at 332–33, 333 n.3.
[38] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

her husband's employment at Avondale from 1972 through 1979.[39] Hopeman was a subcontractor for Avondale during the relevant time period performing joinery or marine carpenter services on vessels at Avondale's Main Yard.[40] In 1961, and from 1965 to the mid-1970s, Hopeman installed certain materials—some of which contained asbestos—in the living quarters and galley spaces of some of the vessels constructed at Avondale.[41] When installed in the living quarters of these vessels, the wallboard panels consisted of a Johns-Manville-manufactured marinite core and Micarta, a laminate sheet manufactured by Westinghouse.[42] Westinghouse conceived of, and held the patent for, the method of affixing its Micarta laminate to a marinite core for use as a final wallboard panel.[43] Use of wallboard panels on certain vessels at Avondale was mandated by ship specifications outlined by the vessel owner and approved by the U.S. Coast Guard.[44]

## II. Disputed Facts

Plaintiff and Avondale argue Hopeman's motion for partial summary judgment should be denied because there are disputed issues of material fact. First, Hopeman states it is an undisputed fact that its work as a joinery or marine subcontractor was only on a limited number of newly constructed vessels at Avondale's Main Yard.[45] In footnote 2 in support of that contention, Hopeman posits "[d]uring the time Hopeman was present at

---

[39] R. Doc. 111-25 at ¶ 1; *see also* R. Doc. 171-12 at ¶ 1; *see also* R. Doc. 173-1 at ¶ 1.
[40] R. Doc. 111-25 at ¶ 2; *see also* R. Doc. 171-12 at ¶ 2; *see also* R. Doc. 173-1 at ¶ 2.
[41] R. Doc. 111-25 at ¶ 3; *see also* R. Doc. 171-12 at ¶ 3; *see also* R. Doc. 173-1 at ¶ 3.
[42] R. Doc. 111-25 at ¶ 4; *see also* R. Doc. 171-12 at ¶ 4; *see also* R. Doc. 173-1 at ¶ 4. Plaintiff denies this to the extent it suggests Hopeman was not a manufacturer of the asbestos-containing wallboards at issue. R. Doc. 171-12 at ¶ 4. From a purely factual standpoint, however, Plaintiff does not deny this statement.
[43] R. Doc. 111-25 at ¶ 5; *see also* R. Doc. 171-12 at ¶ 5; *see also* R. Doc. 173-1 at ¶ 5. Plaintiff denies this to the extent it suggests Hopeman was not a manufacturer of the asbestos-containing wallboards at issue. R. Doc. 171-12 at ¶ 5. From a purely factual standpoint, however, Plaintiff does not deny this statement.
[44] R. Doc. 111-25 at ¶ 6; *see also* R. Doc. 171-12 at ¶ 6; *see also* R. Doc. 173-1 at ¶ 6. Plaintiff denies this with no citation to the record. Thus, the Court treats this statement of fact as admitted pursuant to Rule 56 of the Federal Rules of Civil Procedure.
[45] R. Doc. 111-25 at ¶ 2.

Avondale and required to utilize asbestos-containing wallboard, Hopeman worked on only approximately 72 of the 1,296 total vessels constructed at the shipyard, totaling 5.6% of the vessel construction."[46] Avondale denies that Hopeman's work was limited to newly constructed vessels.[47] Plaintiff denies that Hopeman only worked on a limited number of vessels at Avondale's Main Yard.[48] Avondale further denies the relevance of the factual information contained in footnote 2 because "it constitutes factual information not referenced in the corresponding Motion or Memorandum and which is immaterial to the issues presented in Hopeman's Motion."[49] The Court finds these are facts in dispute but that the facts disputed are not material to a decision on the motion.

Second, Hopeman contends it is an undisputed fact that its work at Avondale was done pursuant to plans and specifications.[50] Plaintiff denies the work was always completed according to plans and specifications, though she admits this occasionally was true.[51] Although the Court also finds these are facts in dispute, these issues are not material to a decision on the pending motion.

Third, Hopeman argues it is an undisputed fact that it did not hold the wallboard out to the public as its own.[52] Even more specifically, Hopeman contends it is an undisputed fact that it never promoted the wallboards for sale through advertising.[53] Conversely, both Plaintiff and Avondale state it is an undisputed fact that Hopeman did hold the wallboard out to the public as its own, relying on deposition testimony from former Hopeman employees, former Avondale employees, and billing invoices between

---

[46] R. Doc. 111-25 at n.2.
[47] R. Doc. 173-1 at ¶ 2 (citing R. Doc. 173-5)
[48] R. Doc. 171-12 at ¶ 2 (citing R. Doc. 171-8, R. Doc. 171-9).
[49] R. Doc. 173-1 at n.2 (citing R. Doc. 111-1 at p. 1).
[50] R. Doc. 111-25 at ¶ 3.
[51] R. Doc. 171-12 at ¶ 3 (citing R. Doc. 171-11).
[52] R. Doc. 111-25 at ¶ 7.
[53] *Id.* at ¶ 8.

7

Avondale and Hopeman.[54] This evidence, Plaintiff and Avondale argue, could enable a reasonable jury to infer Hopeman held the wallboard out to the public as its own, creating a genuine dispute of material fact. These facts are in dispute and, as discussed below, are material to this decision.

## LAW AND ANALYSIS

### I. Hopeman is not a manufacturer.

Defendant seeks summary judgment that it was not a manufacturer of asbestos during the relevant period of exposure because it was an end-user of the wallboards that were glued together by Wayne.[55] Initially, in opposition to the instant motion, Plaintiff argues Hopeman is a manufacturer under an alter-ego theory of liability.[56] Specifically, Plaintiff seeks to attribute Wayne's assembly of the asbestos wallboard to Hopeman.[57] In its reply, Defendant objects to "this impermissible attempt to enlarge the pleading/complaint" and asks the Court to "disregard[] [it] as a red herring."[58] Thus, as a preliminary matter, the Court must determine whether the alter-ego theory is sufficiently pleaded to be properly before the Court.

The United States Court of Appeals for the Fifth Circuit in *Cutrera v. Board of Supervisors of Louisiana State University* held "[a] claim which is not raised in the complaint but, rather, is only in response to a motion for summary judgment is not properly before the court."[59] *Cutrera* involved a wrongful termination action instituted by

---

[54] R. Doc. 171-12 at ¶¶ 7-8; *see also* R. Doc. 173-1 at ¶¶ 7-8; *see also* R. Doc. 173-15 at p. 5; *see also* R. Doc. 117-5 at p. 9; *see also* R. Doc. 171-10 at p. 38; *see also* R. Doc. 173-6; *see also* R. Doc. 173-16.
[55] R. Doc. 111-2 at p. 6.
[56] R. Doc. 171 at p. 4.
[57] *Id.*
[58] R. Doc. 158 at p. 2.
[59] *Cutrera v. Bd of Sup'rs of Louisiana State U.*, 429 F.3d 108, 113 (5th Cir. 2005) (citing *Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990)).

a university employee who suffered from macular degeneration.[60] On summary judgment, the district court summarily entered final judgment as to the plaintiff's First Amendment retaliation claim under 18 U.S.C. § 1983 because Plaintiff's claim was made in her opposition to the motion for summary judgment—not in the plaintiff's complaint.[61] On appeal, the Fifth Circuit affirmed the district court's grant of summary judgment because a plaintiff may not rely on new claims raised for the first time in an opposition to defeat a motion for summary judgment.[62] This is "well-settled law in the Fifth Circuit."[63]

Applying that well-settled rule to the case at bar, a careful review of Plaintiff's pleadings reveals she did not allege Wayne was the alter-ego of Hopeman in her state court petition or in her first amended complaint filed in this Court.[64] Only in Plaintiff's opposition to the motion for partial summary judgment does she allege this basis of liability.[65] During the pendency of the instant litigation (well over a year before the motion was filed), Plaintiff did not seek leave to amend her complaint to assert this claim. To allow Plaintiff to amend her complaint now—less than a month before the trial—or otherwise expand her pleadings, would result in undue delay of this action and significant prejudice to Hopeman.[66] As such, Plaintiff will not be allowed to pursue a claim that Hopeman is liable based on an alter-ego theory.[67] Accordingly, the Court finds that

---

[60] *Id.* at 113.
[61] *Id.*
[62] *Id.*
[63] *Adams v. Columbia/HCA of New Orleans*, 2022 WL 1909409 *7 n.1 (E.D. La. 6/3/2022).
[64] R. Doc. 1-2; *see also* R. Doc. 36.
[65] R. Doc. 171 at p. 4.
[66] *Jones v. Robinson Prop. Grp., LP*, 427 F.3d 987, 994 (5th Cir. 2005) (one factor to consider under Rule 15(a) is "undue delay . . . by virtue of allowance of the amendment." Another is prejudice to the other side.).
[67] *Cutrera*, 429 F.3d at 113.

9

Wayne's assembly of the wallboards did not *ipso facto* render Hopeman a manufacturer of these asbestos-containing products.[68]

Next, Plaintiff argues Hopeman is a manufacturer as defined in the Louisiana Product Liability Act ("LPLA"), which was not signed into law until June 21, 1988.[69] In pertinent part, the LPLA defines "manufacturer" in the following way:

> (1) "Manufacturer" means a person or entity who is in the business of manufacturing a product for placement into trade or commerce. "Manufacturing a product" means producing, making, fabricating, constructing, designing, remanufacturing, reconditioning or refurbishing a product. "Manufacturer" also means:
>
> > (a) A person or entity who labels a product as his own or who otherwise holds himself out to be the manufacturer of the product.
> >
> > (b) A seller of a product who exercises control over or influences a characteristic of the design, construction or quality of the product that causes damage.
> >
> > (c) A manufacturer of a product who incorporates into the product a component or part manufactured by another manufacturer.
> >
> > (d) A seller of a product of an alien manufacturer if the seller is in the business of importing or distributing the product for resale and the seller is the alter ego of the alien manufacturer. The court shall take into consideration the following in determining whether the seller is the alien manufacturer's alter ego: whether the seller is affiliated with the alien manufacturer by way of common ownership or control; whether the seller assumes or administers product warranty obligations of the alien manufacturer; whether the seller prepares or modifies the product for distribution; or any other relevant evidence. A "product of an alien manufacturer" is a product that is manufactured outside the United States by a manufacturer who is a citizen of another country or who is organized under the laws of another country.
>
> (2) "Seller" means a person or entity who is not a manufacturer and who is in the business of conveying title to or possession of a product to another person or entity in exchange for anything of value.

---

[68] In *Cortez, et al. v. Lamorak Insurance Co., et al.*, Judge Vance rejected "liability for Hopeman under alter ago or single business theories in its August 10, 2022 Order and Reasons" on the merits. 20-cv-2389, R. Doc. 1179 at p. 8 (8/29/22).

[69] R. Doc. 171 at p. 7; *see also* John Kennedy, *A Primer on the Louisiana Products Liability Act*, 49 LA. L. REV. 565, 570 (1989).

> (3) "Product" means a corporeal movable that is manufactured for placement into trade or commerce, including a product that forms a component part of or that is subsequently incorporated into another product or an immovable. "Product" does not mean human blood, blood components, human organs, human tissue or approved animal tissue to the extent such are governed by R.S. 9:2797.[70]

Finally, Plaintiff argues "there is a triable issue of fact regarding whether Hopeman was a manufacturer" because "Hopeman fabricated or refurbished bulkheads and living quarters, and installed asbestos-containing products into these areas as component parts of ships. Ships at Avondale are clearly corporeal movables manufactured for placement into commerce. On this basis alone, . . . Hopeman is a manufacturer."[71] Said differently, Plaintiff argues Hopeman fits, and the Court should apply, the LPLA's definition of manufacturer enshrined at La. R.S. 9:2800.53(1) even though the LPLA was enacted years after Mr. Adams' work ended at Avondale.[72]

The "Louisiana Supreme Court has held that the LPLA does not apply retroactively because it"[73] "alters substantive rights."[74] "A statute that changes settled law relating to substantive rights only has prospective effect."[75] Plaintiff cites no authority for a finding that the LPLA's definition of a manufacturer should be applied retroactively, and concedes the LPLA does not apply in this case because the exposure period from 1972 to

---

[70] La. R.S. 9:2800.53 (2022).
[71] R. Doc. 171 at p. 7.
[72] The Court further notes the LPLA's definition of manufacturer incorporated the pre-LPLA definition of "professional vendor," a jurisprudentially created concept that treats certain professional vendors like manufacturers. Thus, under the LPLA, a professional vendor *is* a manufacturer. Under pre-LPLA law, a professional vendor is treated like, but is not actually, a manufacturer. To the extent Plaintiff argues Hopeman is a manufacturer under the LPLA because it is a "seller of a product who exercises control over or influences a characteristic of the design, construction or quality of the product that causes damage," i.e., a professional vendor, the Court addresses that argument separately from the inquiry of whether Hopeman is a manufacturer because (1) the LPLA is not applicable in this case, and (2) under pre-LPLA law, a distinction existed between manufacturers and professional vendors. *See* Part II.
[73] *Moore v. BASF Corp.*, 2011 WL 5869597 *2 (E.D. La. 11/21/2011) (internal quotations omitted).
[74] *Gilboy v. Amer. Tobacco Co.*, 582 So.2d 1263, 1264-65 (La. 1991).
[75] *Id.*

11

1979 occurred before the LPLA's enactment in 1988.[76] Instead, Plaintiff argues the Court should adopt the LPLA's definition of manufacturer because the LPLA merely "codified existing Louisiana Products Liability law."[77] In support of this contention, Plaintiff offers no citation to cases in support.[78]

Be that as it may, the Court need not decide the thorny issue of whether the LPLA's definition of manufacturer merely restates preexisting law because, even if applied, the provision in question would not render Hopeman a manufacturer. In *Cortez v. Lamorak Insurance Company*, an asbestos exposure case involving Avondale, Hopeman, and Wayne, a different section of this Court recently held Hopeman, as a subcontractor of Avondale, was not a manufacturer of asbestos-containing products by virtue of the "language in the LPLA that states that the term manufacturer includes a manufacturer of a product who incorporates into the product a component or part manufactured by another manufacturer."[79] The *Cortez* plaintiffs' arguments were the exact same arguments Plaintiff raises in this case: that Hopeman falls within this definition of manufacturer on account of its having a hand in manufacturing the vessels at Avondale by installing walls that separated living quarters, and because Hopeman incorporated another's product (the wallboard) into the vessels.[80] In *Cortez*, the court reasoned this argument was a "strained interpretation" of the LPLA because the provision at issue "applies when a firm [responsible for manufacturing the final product] incorporate[s] others' goods into it."[81] Because "Hopeman was a subcontractor that merely furnished a

---

[76] R. Doc. 171 at p. 7.
[77] *Id.*
[78] *Id.*
[79] *Cortez, et al. v. Lamorak Insurance Co., et al.*, 20-cv-2389, R. Doc. 1179 at p. 10 (8/29/22).
[80] R. Doc. 171 at p. 7.
[81] *Cortez, et al.*, 20-cv-2389, R. Doc. 1179 at p. 10.

component to Avondale, which was responsible for the final product," the court determined plaintiffs' arguments failed after a very thorough exploration of the same cases Plaintiff relies on in this case.[82] This Court finds the reasoning and result reached in *Cortez* highly persuasive.[83] In this case, it is undisputed that Hopeman was Avondale's subcontractor. Avondale—as opposed to Hopeman—was responsible for manufacturing the final product: vessels. Thus, Plaintiff's argument that Hopeman fits the definition of manufacturer because it "incorporate[d] into the [vessels] a component or part manufactured by another manufacturer" is a strained interpretation of the LPLA and fails as a matter of law because Hopeman was not responsible for manufacturing the final product.[84] Thus, there are no material facts in dispute and Hopeman is entitled to summary judgment as a matter of law that it is not a manufacturer. The Court will now consider whether Hopeman is a professional vendor.

## II. Genuine disputes of material fact exist as to whether Hopeman was a professional vendor.

Defendant also moves the Court to enter summary judgment that it is not a professional vendor under pre-LPLA law because Plaintiff is unable to establish the existence of the requisite elements.[85] This is so, Hopeman argues, because it is more akin to an end-user or installer of asbestos-containing products as opposed to a professional

---

[82] *Id.* at pp. 10-12. Plaintiff relies on *Radalec, Inc. v. Automatic Firing Corporation*, *Spillers v. Montgomery Ward & Co.*, *Winterrowd v. Travelers Indemnity Co.*, *LeBouef v. Goodyear Tire & Rubber Co.*, and *Rasmussen v. Cashio Concrete Corp.*, all of which are distinguished by Judge Vance in *Cortez*. The Court agrees those cases are distinguishable for the reasons outlined in *Cortez*.
[83] Buttressing this Court's reliance on *Cortez* is the reality that "[n]umerous Louisiana courts have granted summary judgment or directed verdicts in Hopeman's favor on the issue of manufacturer liability." *Cortez, et al.*, 20-cv-2389, R. Doc. 1179 at pp. 10-11 (citing *Buqoui v. Huntington Ingalls, Inc.*, No. 11-7786 (La. Civ. D. Ct. Apr. 2, 2021); *Becnel v. Am. Motorists Ins. Co.*, No. 12-6486 (La. Civ. D. Ct. May 9, 2013); *Cagle v. Huntington Ingalls, Inc.*, No. 16-1875 (La. Civ. D. Ct. Jan. 25, 2017); *Jones v. Am. Emp. Ins. Co.*, No. 14-6711 (La. Civ. D. Ct. Feb. 2, 2016).
[84] R. Doc. 171 at p. 7.
[85] R. Doc. 111-2 at p. 9.

13

vendor.[86] A "professional vendor," under pre-LPLA law,[87] is held to the same standard of liability as a manufacturer.[88] Under pre-LPLA law, to classify Hopeman as a professional vendor, Plaintiff must prove the following at trial: (1) Hopeman was capable of controlling the quality of the product at issue,[89] (2) Hopeman held the products out to the public as its own, and (3) "the size, volume, and merchandising practices of the defendant bring it within the class of professional vendors who are presumed to know the defects in their wares."[90]

Two different sections of this Court have found genuine disputes of material fact preclude summary judgment as to whether Hopeman was a professional vendor.[91] In *Becnel v. Lamorak Insurance Company*, an asbestos exposure case like the one before the Court, Hopeman argued it was entitled to summary judgment that it was not a professional vendor of asbestos-containing products because the plaintiffs "failed to satisfy their evidentiary burden of proof."[92] The court disagreed, finding genuine disputes of material fact existed as to the first two elements of professional vendor status precluding Hopeman's right to summary judgment.[93] First, the court determined plaintiffs had produced evidence sufficient to create a genuine dispute of material fact as to the first element of the professional vendor claim—that Hopeman was capable of

---

[86] R. Doc. 111-2 at p. 8.
[87] *Chappuis v. Sears Roebuck & Co.*, 358 So. 2d 926 (La. 1978).
[88] *Cortez, et al.*, 20-cv-2389, R. Doc. 1179 at p. 12 (8/29/22).
[89] *Roy v. Colgate Palmolive Co.*, 2021 WL 1574038 at *3 (E.D. La. 4/22/2021) (quoting *Nelton v. Astro-Lounger Mfg. Co.*, 542 So. 2d 128, 132 (La. App. 1989), and discussing the leading case of *Chappuis*, 358 So. 2d 926). Defendant argues this definition of a "professional vendor" should not apply to it because the definition is limited to "retailers." R. Doc. 111-2 at p. 7. The Court finds no principle limiting "professional vendor" status to only "retailers" in the relevant Louisiana caselaw defining professional vendor, and different sections of this Court have applied the instant definition of "professional vendor" to Hopeman. *See, e.g.*, *Becnel v. Lamorak Insurance Co., et al.*, 2022 WL 3369163 (E.D. La. 8/16/22); *Cortez, et al.*, 20-cv-2389, R. Doc. 1179 (8/29/22). Thus, Hopeman's argument is without merit.
[90] *Dempster v. Lamorak Ins. Co.*, 2020 WL 5659546 *3 (E.D. La. 9/21/20).
[91] *Becnel*, 2022 WL 3369163 (E.D. La. 8/16/22); *Cortez, et al.*, 20-cv-2389, R. Doc. 1179 (8/29/22).
[92] *Becnel*, 2022 WL 3369163 at *2.
[93] *Id.* at *3.

controlling the quality of the product at issue—through the testimony of John Baker and Bertram Hopeman.[94] Mr. Baker testified that Hopeman supplied Micarta and Marinite to Wayne and directed Wayne to combine the two parts into a new and final product.[95] Mr. Hopeman himself testified that his company directed Wayne in various aspects of the manufacturing process, including Hopeman's instruction to Wayne to configure panels for projects and Hopeman's sending over specifications to Wayne for each panel, including color, size, and thickness.[96] The testimony, Judge Lemelle reasoned, considered in the light most favorable to the non-movant, could support a conclusion that Hopeman controlled the quality of the asbestos-containing wallboards.[97] Next, as to the second professional vendor element, the *Becnel* court found "there [was] evidence in the record that Hopeman held out the products it sold as its own."[98] Specifically, there existed sample invoices from Hopeman to Avondale requesting payment for the Micarta/Marinite composite panels at issue and the former receiver employed in Avondale's warehouse—Jose Cochran—testified that the wall panels at issue were delivered in trucks marked with Hopeman Brother's name/logo.[99] As a result, the Court in *Becnel* found Hopeman was not entitled to summary judgment that it did not meet the definition of a professional vendor.[100]

In *Cortez*, another asbestos exposure case, Hopeman argued similarly that it was entitled to summary judgment that it was not a professional vendor of the asbestos-containing wallboards under pre-LPLA law.[101] Judge Vance disagreed because "plaintiffs

---

[94] *Id.*
[95] *Id.*
[96] *Id.*
[97] *Id.*
[98] *Id.*
[99] *Id.*
[100] *Id.* at *4.
[101] *Cortez, et al.*, 20-cv-2389, R. Doc. 1179 at p. 12.

15

[] created material fact issues on whether Hopeman had control over the quality of the product, held it out as its own, and operated with the scale necessary to be deemed a professional vendor."[102] First, in *Cortez*, it was undisputed that Hopeman selected and purchased the components of the wallboards that Wayne regularly assembled for Hopeman.[103] This fact, coupled with the court's finding that Hopeman was a sophisticated purchaser of the Micarta it provided to Wayne, which was one of the two asbestos-containing components of the wallboards at issue, lent itself to the conclusion that Hopeman had significant control over the quality of the product for professional vendor status purposes.[104] As to the second element—Hopeman holding out the asbestos-containing wallboards as its own product—the plaintiffs presented evidence that the subcontracts between Hopeman and Avondale identified Hopeman as the supplier of the wallboard.[105] Additionally, like in *Becnel*, Hopeman's invoices to Avondale listed only Hopeman as the vendor of the wallboard.[106] Finally, the plaintiffs and their co-workers associated the wallboards with Hopeman.[107] Thus, "Hopeman's invoices, its contracts, and the identification of Hopeman with the wallboards by the workers on-site together support[ed] an inference that Hopeman held the wallboards out as its own."[108] As to the third element of professional vendor liability, evidence that "Hopeman operated at multiple sites and furnished wallboards for over a decade on 72 ships" created "an issue of material fact as to whether Hopeman operated on the requisite scale to be a professional vendor."[109] As a result, Judge Vance denied Hopeman's motion for partial

---

[102] *Id.* at p. 17.
[103] *Id.* at pp. 14-15.
[104] *Id.* at pp. 14-15.
[105] *Id.* at p. 15.
[106] *Id.*
[107] *Id.* at pp. 15-16.
[108] *Id.* at p. 16.
[109] *Id.* at pp. 16-17.

16

summary judgment.

Applying *Becnel* and *Cortez* to the case at bar, it is clear there are genuine factual disputes as to whether Hopeman was a professional vendor of the asbestos-containing wallboards at issue. First, like in *Becnel* and *Cortez*, Plaintiff and Avondale have provided evidence that Hopeman controlled the quality of the wallboards it installed at Avondale. The deposition testimony of Hopeman executive Charlie Johnson establishes Hopeman bought the two component parts of the wallboards (Micarta and Marinite) and shipped them to Wayne for them to be glued together.[110] Hopeman secretary John Baker testified that Wayne glued the Micarta and Marinite together according to a sketch that Hopeman provided.[111] Bert Hopeman, Hopeman's top executive officer, testified that his company also instructed Wayne on the color, size, and thickness of the panels.[112] This is evidence of extensive control by Hopeman over the design of the wallboards that ultimately were installed in Avondale ships. At the very least, then, the testimony from Charlie Johnson, John Baker, and Bert Hopeman creates a genuine dispute of material fact as to whether Hopeman sufficiently controlled the quality of the wallboards at issue.

Second, like in *Becnel* and *Cortez*, Avondale in its opposition has provided invoices from Hopeman to Avondale that identify only Hopeman as the vendor of the wallboards.[113] This fact, coupled with testimony that workers on-site viewed the wallboards as associated with Hopeman,[114] would allow a reasonable jury to infer Hopeman held the wallboards out as its own to the public. Third, there is evidence that

---

[110] R. Doc. 117-5 at p. 9.
[111] R. Doc. 171-10 at p. 38.
[112] R. Doc. 173-6 at pp. 581-82.
[113] *See* R. Doc. 173-16.
[114] R. Doc. 173-15 at p. 5.

17

Hopeman operated at multiple sites,[115] furnished wallboards for over a decade,[116] and worked on at least 72 vessels at Avondale,[117] all of which creates an issue of material fact as to whether Hopeman operated on the requisite scale to be a professional vendor.[118] This is consistent with the reasoning and the outcome reached in *Becnel* and *Cortez*. Accordingly, genuine disputes of material fact exist as to each essential element of Plaintiff's claim for professional vendor liability, and Hopeman is not entitled to summary judgment.

## CONCLUSION

**IT IS ORDERED** that Defendant's motion for partial summary judgment[119] is **GRANTED IN PART AND DENIED IN PART**. Defendant is entitled to summary judgment that it is not a manufacturer, but the issue of whether Defendant is a professional vendor will proceed to the jury.

New Orleans, Louisiana, this 8th day of September, 2022.

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[115] R. Doc. 173-12.
[116] R. Doc. 173-4
[117] R. Doc. 111-25 at n.2 (Hopeman itself asserting it worked on 72 vessels at Avondale Shipyard).
[118] *Cortez, et al.*, 20-cv-2389, R. Doc. 1179 at pp. 16-17.
[119] R. Doc. 111.